### In re Laurence & Paula RODNOK, Debtors.

### Bankruptcy No. 95–31164–T.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

May 1, 1996.

Neil O. Reid, Bankruptcy Legal Clinic of Richmond, P.C., Richmond, Virginia, to debtors.

Irwin A. Heller, Richmond, Virginia, to Moore Loans, Inc.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

Hearing was held on March 6, 1996, on debtors' objection to Moore Loans Inc.'s proof of claim and on Moore Loans's objection to confirmation of debtors' second modified chapter 13 plan. Both objections centered on the valuation of Moore Loans's collateral, a 1993 Ford Aerostar van. Debtors argued that, under the doctrine of res judicata, Moore Loans is bound by the provision in debtors' first modified chapter 13 plan which valued the van at $9,300.00. Moore Loans argued that it is not bound by debtors' first modified plan because it filed a proof of claim valuing the van at $13,-075.00 prior to debtors' first modified plan being confirmed and debtors had failed to object to the claim. In addition to these arguments, both parties presented evidence concerning the value of the van, and at the conclusion of the hearing the court took the issues under advisement.

For the reasons stated in this memorandum opinion, the court finds that Moore Loans is not bound by the provision of debtors' first modified chapter 13 plan that valued the van at $9,300.00 and that the value of the van is $12,000.00.

*Findings of Fact and Conclusions of Law*

On December 29, 1993, debtors, Laurence and Paula Rodnok, entered into a Retail Installment Sale Contract with Universal Ford to purchase a 1993 Ford Aerostar van. Pursuant to the contract, Universal Ford provided financing for $14,993.96 of the $28,-243.86 purchase price. Debtors were to repay the loan in monthly installments of $456.59. As security for the loan, debtors granted Universal Ford a security interest in the van.

Debtors filed a chapter 13 petition on March 27, 1995. At the time of filing, debtors owed $13,645.25 on the loan, which had since been assigned to Moore Loans, Inc. On April 26, 1995, Moore Loans filed a proof of claim for the amount outstanding on the loan, claiming $13,075.00 of the debt as secured by the value of the van with the remaining $570.25 unsecured. Debtor did not object to the proof of claim.

On September 19, 1995, debtors filed a first modified chapter 13 plan.[1] The plan acknowledged a debt to Moore Loans in the amount of $17,800.00 and listed the fair market value of the van at $9,300.00. The plan provided for payments of $323.00 per month for 36 months to Moore Loans. No objections to the plan were filed, and the plan was confirmed on November 16, 1995.

Debtors were forced to file a second modified plan on December 15, 1995, when they fell behind on their plan payments. The second modified plan was identical to the first except that it extended the plan from 36 to 38 months to compensate for the payments which had been missed. Moore Loans filed an objection to the second modified plan on January 16, 1996, arguing that debtors had severely underestimated the value of the van and therefore the amount of Moore Loans's secured claim.

A hearing on confirmation of debtors' second modified plan was held on February 7, 1996. At the hearing, debtors argued that debtors' first modified plan, which valued the van at $9,300.00 and had been confirmed, was res judicata in regard to the issue of the

---

1. Debtors original chapter 13 plan was denied confirmation on September 15, 1995, when the court upheld an objection to confirmation filed by the Internal Revenue Service.

value of the van. Moore Loans argued that their proof of claim, which debtors had not objected to, should govern the value of the van. The court continued the hearing to March 6, 1996, and instructed debtors to file an objection to Moore Loans's proof of claim. Debtors filed the objection on February 20, 1996.

A combined hearing on debtors' objection to Moore Loans's proof of claim and Moore Loans's objection to confirmation was held on March 6, 1996. At the conclusion of the hearing, the court took the issues of res judicata and the value of the collateral under advisement. Each party was invited to submit additional case law on the res judicata issue. Neither party took advantage of this opportunity.

### Discussion and Conclusions of Law

■ This case requires the court to decide if Moore Loans is bound by the provision in debtors' first modified chapter 13 plan which valued Moore Loans's collateral at $9,300.00 despite the fact that Moore Loans had filed a proof of claim valuing the collateral at $13,-075.00 prior to confirmation of the plan. If Moore Loans is not bound by the plan provision, the court must determine the value of Moore Loans's collateral.

### Res Judicata and § 1327(a)

Section 1327(a) of the Bankruptcy Code states "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Section 1327(a) has been interpreted as rendering confirmed chapter 13 plans res judicata in regard to any issue that was raised or could have been raised at the plan confirmation hearing. See Young v. Internal Revenue Serv. (In re Young), 132 B.R. 395, 397 (S.D.Ind.1990); In re Eason, 178 B.R. 908, 913 (Bankr.M.D.Ga.1994). Based on this interpretation, Moore Loans would be bound by the value of its collateral as stated in

debtors' first modified plan since the value of the collateral is an issue that could have been raised at the plan confirmation hearing.

Conflicting with this interpretation of § 1327(a) is the claims allowance process. Under § 502(a) of the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party interest ... objects." 11 U.S.C. § 502(a). Because debtors never objected to Moore Loans's proof of claim, § 502(a) dictates that Moore Loans's claim be allowed, including that part claimed as secured.

Courts have dealt with the inherent conflict between § 1327(a) and § 502(a) in numerous ways. At one extreme, some courts have held that once a creditor files a proof of claim for a secured claim, that claim can only be modified if the proof of claim is objected to. See Sun Fin. Co. v. Howard (In re Howard), 972 F.2d 639, 641 (5th Cir.1992); Fireman's Fund Mortgage Corp. v. Hobdy (In re Hobdy), 130 B.R. 318 (9th Cir. BAP 1991) (holding that § 502(a) governs claims allowance process and should control over general policy considerations embodied in § 1327(a)). Without an objection to the proof of claim, § 1327(a) is not res judicata as to the amount of the claim.[2] Howard, 972 F.2d at 641. At the other end of the spectrum, some courts have held that if a secured creditor fails to object to a chapter 13 plan which values the creditor's collateral, § 1327(a) is res judicata as to the value of that collateral, regardless of whether the creditor had previously filed a proof of claim valuing the collateral. See In re Pence, 905 F.2d 1107, 1110 (7th Cir.1990); In re Keaton, 182 B.R. 203, 204–05 (Bankr.E.D.Tenn.1995); Lee Servicing Co. v. Wolf (In re Wolf), 162 B.R. 98 (Bankr.D.N.J.1993) (holding that a debtor may modify a secured claim through a chapter 13 plan without first challenging the claim by adversary proceeding, objection, or Rule 3012 motion).

---

**2.** At least one bankruptcy judge has suggested that the confirmed plan is binding on all creditors as to the amount to be distributed by the

trustee under the plan but is not binding as to the amount of the claim. In re Hobdy, 130 B.R. at 322 (Perris, J., concurring).

The Fourth Circuit Court of Appeals has taken a middle approach.[3] In determining whether a secured creditor should be bound to the value of its collateral as provided for in a confirmed chapter 13 plan in accordance with § 1327(a), the Fourth Circuit has looked to § 506(a) of the Code and the valuation process. *See Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir.1993). Section 506(a) states that a claim is a secured claim to the extent of the value of the creditor's collateral and is unsecured to the extent that the debt owed to the creditor exceeds the value of the collateral. 11 U.S.C. § 506(a). Value of the collateral can be determined in any hearing concerning the disposition or use of the collateral or the confirmation of a plan affecting the secured creditor's interest. *Id.* Federal Rule of Bankruptcy Procedure 3012 requires that notice of the hearing be given to the holder of the secured claim before the court may determine the value of that creditor's collateral. FED.R.BANKR.P. 3012.

■ In *In re Linkous*, the Fourth Circuit held that valuation of a creditor's collateral must take place in accordance with § 506(a) and Rule 3012. *In re Linkous*, 990 F.2d at 162–63. Therefore, if a chapter 13 plan contemplates valuing a secured creditor's collateral, the secured creditor must be given notice pursuant to Rule 3012 that a valuation hearing is to take place along with the notice of the confirmation hearing. *In re Linkous*, 990 F.2d at 162–63; *see also Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069, 1072 (11th Cir.1990); *In re Basham*, 167 B.R. at 908; *cf. In re Rodgers*, 180 B.R. 504 (Bankr.E.D.Tenn.1995) (notice of confirmation hearing that made it clear debtor disputed validity of creditor's claim and that creditor would receive no distribution under the plan was sufficient notice in itself). Binding a secured creditor to the value of the collateral as stated in a confirmed chapter 13 plan without the creditor receiving the notice required by Rule 3012 is a violation of the due process clause of the Fifth Amendment to the United States Constitution. *In re Linkous*, 990 F.2d at 163.[4]

Section E of debtors' first modified plan states that a complete copy of the plan, including a photocopy of debtors' budget was sent to each party in the case. As stated earlier, the plan listed the fair market value of the van as $9,300.00. On its face, a copy of the plan would appear to have been sufficient to alert Moore Loans that debtors were modifying its secured claim. Under the standard set out in *In re Linkous*, however, the notice provided by debtors falls short. Nowhere does section E of debtors first modified plan state that a valuation hearing was to take place in conjunction with the confirmation hearing. Nor have debtors submitted any evidence that notice was provided by another method. Accordingly, Moore Loans was not provided the appropriate notice that debtors were going to modify their secured claim, and therefore Moore Loans cannot be bound by the $9,300.00 value assigned to the van in debtors' first modified plan. In order to determine the value of Moore Loans's secured claim, the court must now turn to the evidence presented at the March 6, 1996, hearing on debtors' objection to Moore Loans's proof of claim.

---

3. For a comprehensive review of the three approaches taken by courts in addressing the conflict between § 502(a) and § 1327(a), see *In re Basham*, 167 B.R. 903, 905–07 (Bankr.W.D.Mo. 1994).

4. In dissent, Judge Chapman argued that the majority was misguided in relying on the notice requirements of § 506 and Rule 3012. Section 506 and Rule 3012 concern the valuation of collateral securing allowed claims. In order for a claim to be an allowed claim, a creditor must first file a proof of claim in accordance with § 502(a). Because Piedmont Trust Bank, the secured creditor in *Linkous*, did not file a proof of claim until after the debtor's chapter 13 plan was confirmed, Piedmont did not have an allowed claim prior to the confirmation hearing. Therefore the notice requirements of § 506(a) and Rule 3012 were never triggered. *In re Linkous*, 990 F.2d at 165 (Chapman, J., dissenting).

In the instant case, Moore Loans filed its proof of claim on April 26, 1995. On September, 19, 1995, when debtors' filed their first modified plan, debtors' had not objected to Moore Loans's proof of claim. Unlike the debtor in *Linkous*, the Rodnoks should have been fully aware of the value of the van asserted by Moore Loans when they filed their first modified plan. It would appear that the facts of this case present an even stronger case for requiring a debtor to provide notice pursuant to Rule 3012 along with the notice of the confirmation hearing then the facts presented in *Linkous*.

*Value of the Collateral*

 Debtors argue that the fair market value of the van at the time the petition was filed was far less than the $13,075.00 listed in Moore Loans's Proof of Claim. Debtors' calculation that the fair market value was actually $9,300.00 was based on the N.A.D.A. value minus depreciation, such as excessive mileage, dents, and omitted features. In addition, Paula Rodnok testified that, based on a conversation with a local Ford dealer concerning the value of the van, in her opinion the van was worth approximately $10,000.00 at the time the petition was filed.

Moore Loans based its determination that the van had a value of $13,075.00 on the April 1995 N.A.D.A. book value. A collection manager at Moore Loans, testified that the $13,-075.00 figure represented the flat N.A.D.A. trade in value plus additions for various options included in the vehicle. The collection manager admitted that he had never examined the vehicle in question.

The court finds the value of the van to be $12,000.00.[5] As evidenced by the certificate of title, the van came with numerous extras, adding to the overall value of the vehicle. The court also questions debtors' deduction for excessive mileage. At the time of debtors' first meeting of creditors on April 25, 1995, debtors stated that the van had only 25,000 miles on it. Accordingly, the court finds that the actual value of the van more closely resembles the $13,075.00 figure found in Moore Loans's Proof of Claim.

In conclusion, the court finds that because debtors did not provide notice to Moore Loans that its collateral would be valued at the confirmation hearing on debtors first modified plan, Moore Loans is not bound by the provision of debtors' first modified plan which valued the van at $9,300.00. Based on the evidence presented, the court finds the value of the van to be $12,000.00. Accordingly, the court sustains Moore Loans's objection to debtors' second modified chapter 13 plan. The court also sustains debtors' objection to Moore Loans's proof of claim to the extent that the proof of claim values Moore Loans's collateral above $12,000.00.

---

5. Recently, Judge Adams of this district addressed the issue whether retail or wholesale value should be used to determine the value of a secured creditor's collateral when the debtor proposes to retain the collateral under their chapter 13 plan. Judge Adams held that it is inappropriate to subtract the hypothetical costs of sale when the debtor is proposing to retain the collateral, and therefore retail value must be used. *In re Dews,* 191 B.R. 86, 90–91 (Bankr. E.D.Va.1995). This issue is not before the court, and the court makes no ruling in this regard.