**In re Robert Joe GUENTERT and Linda Lea Guentert, Debtors.**

No. 95–40231.

United States Bankruptcy Court, W.D. Missouri.

March 20, 1997.

As Amended May 19, 1997.

**17.** *Id.,* at § 726.

James L. Farmer, Kansas City, KS, for Movant.

Richard V. Fink, Kansas City, MO, for Respondent.

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor Linda Lea Guentert moves this Court to permit her to pay the remaining balance under her Chapter 13 plan (the "plan"), as confirmed, in one lump sum. Rick Fink, the Chapter 13 trustee, objects to the amount of the lump sum payment. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, Ms. Guentert's motion to allow her to pay off her plan as confirmed is Denied.

### FACTUAL BACKGROUND

Robert and Linda Guentert filed a Chapter 13 bankruptcy petition on February 1, 1995. They then proposed a plan that was modified and confirmed on September 20, 1995.[1] The plan proposes to pay 100% of secured creditor's filed and allowed claims and forty-five percent of all unsecured creditors filed and allowed claims.[2] The plan, as confirmed, requires debtors to make weekly payments to the Chapter 13 trustee in the amount of $73.85 for thirty-six months.[3] If debtors had successfully completed the plan as proposed and confirmed, they would have paid the trustee a total of $11,520.00 over that period.[4]

On January 10, 1997, Ms. Guentert's counsel moved this court for "an Order to Pay Remaining Balance on Her Chapter 13 for Final Discharge."[5] The motion states that Mr. Guentert is now deceased and Ms. Guentert would like to pay off the remaining balance on the plan with the proceeds of his life insurance policy. At the time of this motion the plan had run for approximately twenty-three months. Ms. Guentert contends, therefore, that by multiplying the weekly payment of $76.85 by the number of weeks remaining in the plan, approximately 56, the lump sum payment should be in the neighborhood of $4,135.60. Ms. Guentert, through her counsel, then asked the Chapter 13 trustee to calculate the exact amount necessary to pay off the plan. The trustee made that calculation based upon the sum necessary to pay the unsecured creditors 100% of their claims, and informed Ms. Guentert, by letter dated January 22, 1997, that the payoff amount is approximately $22,300.00. The matter was set for hearing on February 10, 1997.

At the scheduled hearing Ms. Guentert's counsel stated that she received approximately $20,000.00 in life insurance proceeds upon Mr. Guentert's death. He argued that those life insurance proceeds are exempt. He also argued that the Court has discretion to shorten the term of a Chapter 13 plan. The Chapter 13 trustee argued that the life insurance proceeds are property of the bankruptcy estate and, in this case, are sufficient to pay 100% of the unsecured creditors' claims. He also argued that the Court can only shorten the term of a thirty-six month chapter 13 plan if there is a 100% pay-off.

### DISCUSSION

The parties raised three issues at the hearing on this matter: (1) whether a chapter 13 plan that proposes to pay less than 100% of the unsecured claims can conclude in less than thirty-six months; (2) whether the postpetition proceeds from a life insurance policy become property of the chapter 13 estate; and (3) assuming the proceeds are property of the bankruptcy estate, whether they are exempt. I will address each issue in turn.

### A. The Term of the Chapter 13 Plan

In order to be confirmed over certain objections, section 1325 of the Code requires the plan to provide for payment to

---

1. Doc. # 22.

2. Id.

3. Id.

4. Doc. # 2.

5. Doc. # 33.

unsecured creditors for a minimum of thirty-six months:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

> .    .    .    .    .

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.[6]

But section 1329 provides for the modification of a confirmed plan before the completion of all the payments to extend or reduce the amount of the payments:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

> .    .    .    .    .

> (2) extend or reduce the time for such payments;[7]

A plan so modified, however, is still subject to the good faith requirements necessary to confirm the plan in the first place.[8] One such good faith requirement is for debtor to apply all of her disposable income to her plan payments for at least three years or to pay 100% of her unsecured creditors' claims.[9] Ms. Guentert, by asking permission to make one lump sum payment at this time, is asking this Court to shorten the life of her Chapter 13 plan to twenty-three months while she pays her unsecured creditors' forty-five percent of their claims. Nothing in the Code gives me the authority to do that.

■ The Code does give me discretion to grant Ms. Guentert a discharge before she completes all of her plan payments under the following circumstances: (1) her failure to complete the payments is due to circumstances for which she should not be justly held accountable; (2) value ... of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and (3) modification of the plan under section 1329 of this title is not applicable.[10] Ms. Guentert must satisfy all three requirements in order to obtain what is sometimes referred to as a "hardship discharge."[11] Her counsel has presented no evidence to this Court, however, to prove that a hardship discharge is indicated in this case. I, therefore, deny, at this time, debtor's motion to make one lump sum payment to complete her Chapter 13 plan.

### B. Property of the Chapter 13 Bankruptcy Estate

■ Property of the bankruptcy estate, as defined by section 541 of the Bankruptcy Code (the "Code"), includes the following: (1) all legal and equitable interests of the debtor at the time the bankruptcy petition is filed;[12] and (2) an interest in property debtor ac-

---

6. 11 U.S.C. § 1325(b)(1)(A).

7. 11 U.S.C. § 1329(a)(2).

8. *In re Richardson*, 192 B.R. 224, 226 (Bankr. S.D.Cal.1996); *In re McKinney*, 191 B.R. 866, 867 (Bankr.D.Ore.1996).

9. *In re Powers*, 140 B.R. 476, 480 (Bankr.N.D.Ill. 1992) (where the court sustained the trustee's objection to a plan which proposed to pay all disposable income to debtor's unsecured creditors for only 15 months); *In re Hurd*, 4 B.R. 551, 559 (Bankr.W.D.Mich.1980) (where the court held that the drafters of Chapter 13 did not intend it to be a disguised Chapter 7 liquidation, therefore, a plan must extend for at least three years).

10. 11 U.S.C. § 1328(b); *In re Dark*, 87 B.R. 497, 498 (Bankr.N.D.Ohio 1988).

11. *In re Nelson*, 135 B.R. 304, 307 (Bankr. N.D.Ill.1991); *In re White*, 126 B.R. 542, 545 (Bankr.N.D.Ill.1991); *In re Dark*, at 498;

12. 11 U.S.C. § 541(a)(1).

quires within 180 days of the filing of the petition as the beneficiary of a life insurance policy.[13] But section 1306 extends the rather broad definition of property of the estate contained in section 541:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title,
>
> > (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, 12 of this title, whichever occurs first; [14]

Thus, while life insurance proceeds would become property of a Chapter 7 bankruptcy estate only if a debtor became eligible to receive them within 180 days of the commencement of the case, in Chapter 13, those same benefits become property of the estate until the case is closed, dismissed, or converted.[15] This case has not been closed, dismissed, or converted, therefore, the insurance proceeds are an asset of the bankruptcy estate. While that statement seems quite clear, its meaning becomes less so in relation to section 1327.[16] Section 1327 suggests that the confirmation of a plan vests all property of the estate not provided for in the plan in the debtor.[17] Furthermore, section 1327 states that "the property vesting in the debtor ... is free and clear of any claim or interest of any creditor provided for in the plan."[18] This language suggests that the insurance proceeds are the exclusive property of Ms. Guentert since the plan has been confirmed and the proceeds were not provided for in the plan. The *Fisher* court resolves this conflict between section 1306 and section 1327 by holding that "upon confirmation, the property of the estate 'vests' or transfers to the debtor, § 1327(b), but the estate survives and there does exist property of the estate after confirmation, § 1306(a)." [19] In other words, property that was identified and not distributed under the plan at confirmation becomes property of the debtor. Property that comes into the estate post-confirmation remains property of the estate.[20] I, therefore, find that the insurance proceeds are property of the estate. That, of course, raises the issue of what happens to property of the estate when there is no provision for its distribution in the confirmed plan.

Section 1329 attempts to respond to that issue by allowing for the modification of a confirmed plan:

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
> >
> > (2) extend or reduce the time for such payments; or
>
> > .        .        .        .        .
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements

---

13. *Id.*, at § 541(a)(5)(C).

14. *Id.*, at § 1306(a)(1).

15. *See Rulo v. Rubin*, 468 F.2d 826, 827 (8th Cir.1972), *cert. denied*, 411 U.S. 908, 93 S.Ct. 1538, 36 L.Ed.2d 198 (1973) (holding that life insurance policies vested in the trustee unless they are exempt under Missouri law); *In re Hoffmeister*, 191 B.R. 875, 878–79 (D.Kan.), *aff'd*, 98 F.3d 1349 (1996) (holding that insurance proceeds are property of the Chapter 13 estate either because there is a shared interest in the proceeds or because the property insured was property of the estate, therefore, the proceeds are property of the estate); *In re Feher*, 202 B.R. 966, 970 (Bankr.S.D.Ill.1996) (holding that automobile in-

surance proceeds acquired after the case was filed and before it was closed, dismissed, or converted are property of the estate).

16. *City of Chicago v. Fisher (In re Fisher)*, 203 B.R. 958, 960–61 (N.D.Ill.1997).

17. 11 U.S.C. § 1327(b).

18. *Id.*, at 1327(c).

19. *Fisher*, 203 B.R. at 962.

20. *Id.*

of section 1325(a) of this title apply to any modification under subsection (a) of this section.[21]

Section 1322 deals with the contents of a plan,[22] and section 1323 deals with the modification of a plan before confirmation.[23] Neither section is relevant to this matter. Section 1329(b)(1), however, also makes section 1325(a), which sets out the requirements for confirmation of a Chapter 13 plan, applicable to any plan modification. Section 1325(a)(4) provides that a chapter 13 plan cannot be confirmed unless it satisfies what is generally known as the "best interest of creditors test." This "test" provides that a plan must distribute to unsecured creditors over the life of the plan at least as much property as they would have received in a Chapter 7 liquidation had all the property been liquidated on the effective date of the plan.[24] Since a Chapter 13 plan cannot be confirmed without satisfying the best interest of creditors test, it therefore, cannot be modified unless the modification, likewise, satisfies the best interest of creditor's test. A modified plan becomes the plan after an order modifying the plan becomes effective.[25] While there is no specific Code provision so providing, it stands to reason that any property that has become property of the estate post confirmation must be calculated in the best interest of creditor's test before any plan modification can be confirmed. In determining the best interest of creditor's test, the Court must consider whether such property is exempt.

■ Exempt property is not liable for any debt of the debtor, therefore, it is not subject to the best interest of creditors test:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case.[26]

Notwithstanding whether the plan must be modified to include the insurance proceeds, Ms. Guentert claims the insurance proceeds are exempt.

### C. Exempt Property

■ An individual debtor may exempt certain property of the estate.[27] The Code provides one exemption scheme in section 522(d),[28] however, it also allows a state to opt out of this scheme and establish its own.[29] Missouri chose to opt out and allows debtors domiciled in Missouri to exempt from property of the estate any property that is exempt from attachment and execution under Missouri state law.[30] Some proceeds are exempt under section 513.430 of Missouri's Revised Statutes with certain limitations:

The following property shall be exempt from attachment and execution to the extent of any person's interest therein:

.  .  .  .  .

(10) Such person's right to receive:

.  .  .  .  .

(e) Any payment under a stock bonus plan, pension plan, disability or death benefit plan, profit-sharing plan, non-public retirement plan or any similar plan described, defined, or established pursuant to section 456.072, RSMo, annuity or similar plan or contract on account of illness, disability, death, age or length of service, to the extent reasonably necessary for the support

21. 11 U.S.C. § 1329(a) and (b)(1).

22. *Id.,* at § 1322.

23. *Id.,* at § 1323.

24. 11 U.S.C. § 1325(a)(4).

25. *Id.,* at § 1329(b)(2).

26. 11 U.S.C. § 522(c).

27. 11 U.S.C. § 522(b).

28. *Id.,* at § 522(d).

29. 11 U.S.C. § 522(b)(2)(A).

30. Mo.Stat.Ann. § 513.427 (Supp.1997).

of such person and any dependent of such person ...[31]

But, proceeds designated only as insurance proceeds are not exempt in Missouri.[32] Ms. Guentert may, therefore, be able to exempt some or all of the life insurance proceeds if she can prove that the proceeds are of the type designated in section 513.430(10)(e), and if they are reasonably necessary for her support."[33] The Court in *In re Sawyers*[34] listed eleven factors courts should analyze in determining whether particular proceeds are reasonably necessary for a debtor's support. Those factors are: (1) debtor's present and anticipated living expenses; (2) debtor's present and anticipated income; (3) the age of debtor and her dependents; (4) debtor's health; (5) debtor's ability to work and earn a living; (6) debtor's job training and skills; (7) debtor's other assets; (8) the liquidity of debtor's assets; (9) debtor's ability to save for retirement; (10) debtor's special needs; and (11) debtor's other financial obligations.[35] In this case, under totally different circumstances, a determination was made as to the amount reasonably necessary for both Mr. and Ms. Guentert's support. When they filed their Chapter 13 petition on February 1, 1995, they listed their income and expenses in order to determine the amount of disposable income that could be made available to pay their creditors. Schedule I lists current income of individual debtors and provides that Ms. Guentert is unemployed and Mr. Guentert earns a salary and receives retirement benefits for total monthly income of $2,130.00. Schedule J lists current expenditures of individual debtors and provides that Mr. and Mrs. Guentert's monthly expenses total $1,800.00. Debtors have one daughter who was eighteen years old when the petition was filed. Most certainly, with Mr. Guentert's death, this information is no longer accurate. Debtor's counsel has not moved to amend Ms. Guentert's bankruptcy schedules to reflect these very real changed circumstances, or to claim the life insurance proceeds as exempt. Therefore, the Court cannot render a decision as to this issue.

For all of the above reasons I can find as follows. The Court has no discretion to shorten the term of a thirty-six month Chapter 13 plan unless the plan, as shortened, pays unsecured creditors 100% of their claims. Therefore, debtor's motion is DENIED. I do have discretion to grant a discharge to a debtor who has not completed payments under a Chapter 13 plan under certain circumstances.[36] But the parties have given me no grounds to grant Ms. Guentert such a discharge. The life insurance proceeds are property of the bankruptcy estate, therefore, they must be turned over to the Chapter 13 trustee. The Chapter 13 plan should be modified to reflect this property and determine its distribution. The proceeds may be exempt if they are reasonably necessary for Ms. Guentert's support. But debtor must move to amend her bankruptcy schedules to reflect her current circumstances before the Court can make that determination. I will, therefore, stay the effect of this Order until April 3, 1997, to allow debtor's counsel an opportunity to move to amend the income and exemption schedules, and to allow this Court to determine whether the proceeds are exempt, if such a motion is filed.

An Order in accordance with this Memorandum Opinion will be entered this date.

---

**31.** Mo.Stat.Ann. § 513.430(10)(e) (Supp.1997); *Cyrak v. Poynor*, 80 B.R. 75, 78–80 (N.D.Tex. 1987).

**32.** *Reinecke v. Commissioner of Internal Revenue*, 220 F.2d 406, 411 (8th Cir.1955); *In re Pettigrew*, 115 B.R. 214, 215 (Bankr.E.D.Mo.1990); *In re Williams*, 82 B.R. 518, 519 (Bankr.W.D.Mo. 1988).

**33.** *In re Walters*, 172 B.R. 283, 285 (Bankr. W.D.Mo.1994); *In re Smith*, 142 B.R. 334, 336 (Bankr.E.D.Mo.1992).

**34.** 135 B.R. 371, 374–75 (Bankr.W.D.Mo.1992).

**35.** *Id.*

**36.** 11 U.S.C. § 1328(b).