## MASSACHUSETTS HOUSING FINANCE AGENCY, Appellant,

v.

### Oteldino Brito EVORA; Marie G. Fidalgo Evora, Appellees.

### No. CIV. A. 99–12669–WGY.

United States District Court, D. Massachusetts.

Nov. 13, 2000.

Deirdre Keady, Harmon Law Offices, Newton, for Massachusetts Housing Finance Agency, Appellants.

Pamela S. Holleman, Sullivan & Worcester, Boston, for Oteldino Brito Evora, A Fidalgo Evora, Appellees.

*MEMORANDUM*

YOUNG, Chief Judge.

## I. INTRODUCTION

This appeal results from the red hot housing market that has gripped the Boston area in recent years. The Appellant, Massachusetts Housing Finance Agency (the "Finance Agency") appeals the decision of the Bankruptcy Court denying its motion to revalue its secured claim to reflect the rapid appreciation of a home in which it has a security interest. The Appellee, Oteldino Brito Evora and Maria G. Evora (collectively the "Evoras") filed a petition for Chapter 13 relief in 1997 at which time their residence (the "Property") was valued at $80,000. The Finance Agency's allowed secured claim in the Property was properly limited to the then undisputed value. Within two years, however, the value had doubled. The Finance Agency seeks to benefit from the appreciation and asks that its allowed secured claim be redetermined in light of the new valuation.

## II. FACTUAL BACKGROUND

Because so much in bankruptcy depends on timing, the procedural and factual history will be provided in chronological order. While the following rendition is dry, at best, it does offer a complete picture of the proceedings that led to this appeal.

On May 23, 1997, the Evoras filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. With a foreclosure sale pending, on August 27, 1997 the Evoras also filed a petition for relief under Chapter 13 of the Bankruptcy Code. Serial bankruptcy filings of this sort are not uncommon and are referred to in bankruptcy lingo as a "Chapter 20."

Pursuant to Section 727 of the Bankruptcy Code, the Evoras were discharged of all unsecured debt contained in their Chapter 7 petition for relief on September 3, 1997. Two days later, the Evoras filed their Chapter 13 plan (the "Plan") in which they proposed to pay the Finance Agency, their only creditor, a total of $99,640.20 at the rate of $1,660.67 per month over 60 months. The Plan valued the Property, in which the Finance Agency held a security interest, at $80,000. On September 9,

1997, the Finance Agency filed a proof of claim for a secured claim in the amount of $157,413.17 and arrearage as of August 27, 1997, of $18,861.20.

On September 12, 1997 the Evoras filed motions requesting the Bankruptcy Court to determine the extent of the Finance Agency's secured status and to value the Property at $80,000. In the absence of any objection by the Finance Agency, which agreed with the valuation, the Bankruptcy Court granted the Evoras' motions on October 24, 1997. Three days later, the Chapter 13 Trustee sought an interim order to begin disbursement under the Plan, which was subsequently granted.

An order confirming the Plan was issued on August 11, 1998 reflecting an effective date for the Plan of September 1, 1997.[1] The Plan stated:

> The secured claim of Mass Housing Finance Agency is modified as follows: The Creditor shall retain its lien on 17 Payson Avenue, Dorchester, MA until discharge in this case. The Court has determined that the value of the property and the secured claim is $80,000. The balance of the claim was discharged in a prior Chapter 7 case 97–15022. Debtor shall pay $99,640.20 through the plan which is the secured claim with 9% interest.

The Plan also vested the Property in the Evoras. Throughout the Plan, the Evoras complied with the payment schedule and it proceeded without incident.

Then, on September 3, 1999, the Evoras filed a Motion to Approve Refinancing (the "Motion") after they were able to obtain a commitment from a third party, Mortgage Security, to refinance the Property. According to the Motion, the Property then had an appraised value of $156,000. The Evoras proposed to obtain a thirty year mortgage in the amount of eighty percent of the value of the Property. Moreover,

the Motion also purported to pay the Chapter 13 Trustee a one-time, lump sum payment in full satisfaction of its obligations to the Finance Agency under the Plan.[2]

The Finance Agency filed an objection to the Motion and suggested that the Bankruptcy Court deny the Motion for several reasons. First, if the Motion was approved, then the Evoras would be allowed to "manipulate the Code to modify a mortgage, receive a 'super discharge' and then pocket thousands of dollars on a refinance of a debt simply because the property values have increased." Second, the Evoras had "reintroduced the issue of valuation" and must now amend their plan in accordance with the new valuation. Finally, the intent of Congress was to provide a fresh start "not to provide a windfall profit at the expense of their creditors." At a hearing on October 18, 1999 the Bankruptcy Court overruled the objection.

Undaunted (and feeling misunderstood) the Finance Agency filed a Motion for Reconsideration of the Court's Order in which it asserted that the Evoras were, in effect, modifying the Plan by reducing the amount of time in which the Finance Agency would be paid the full amount of their loan. As a result, the new modified plan must meet the requirements of 11 U.S.C. § 1329 which, according to the Finance Agency, included a revaluation of its claim based on the present value of the Property.

The Bankruptcy Court rejected the Finance Agency's motion for reconsideration, ruling that it was, "in effect, seeking a determination that [its] allowed secured claim is no longer $80,000 but a higher amount." *In re Evora*, 242 B.R. 560, 561 (Bankr.D.Mass.1999). The Bankruptcy Court neither accepted nor rejected the proposition that the Evoras, through their

---

**1.** Originally, the Bankruptcy Court had provided for an effective date of September 1, 1996. This was later amended to reflect the correct year as 1997.

**2.** At the time of the Motion, a $59,053.91 balance remained.

Motion, were seeking to modify the Plan. *See id.* Instead, the Bankruptcy Court ruled that a modification of the Plan did not require that the amount of a secured claim be redetermined. *See id.* To support its holding, the Bankruptcy Court relied on cases that contained analogous circumstances in which courts had refused to allow debtors to shift the burden of depreciation of collateral to the creditor by reclassifying the claim as unsecured. According to the Bankruptcy Court, once a debtor decides to keep the collateral it "is entitled to any later appreciation in value but also must suffer any resulting depreciation or loss." *Id.* (quoting *In re Meeks*, 237 B.R. 856, 861–62 (Bankr.M.D.Fla. 1999)).

Following these denials, the Finance Agency also sought a stay pending appeal which was summarily denied. Thus, the refinancing has occurred, the allowed secured claim has been paid, and the Evoras' have essentially completed the Plan.

It is from these decisions that the Finance Agency appeals.

## III. RELEVANT STANDARD

A district court's standard of review when deciding an appeal from a bankruptcy court is governed by Fed. R. Bankr.P. 8013. The rule provides that the court "may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." While a district court reviews conclusions of law *de novo*, *In re First Software Corp.*, 97 B.R. 711, 713 (D.Mass.1988) (Wolf, J.), "findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013.

Because the case before the Court involves statutory interpretation, the Bankruptcy Court's decision will be reviewed de novo.

## IV. DISCUSSION

### A. Mootness

Before reaching the merits of this case, the Court must first address the Evoras' contention that the Finance Agency's appeal is moot. The Evoras argue that, because the refinancing has occurred and the funds have been disbursed and accepted by the Finance Agency, there is no controversy before this Court. *See* Appellee's Brief at 9. Their conclusion is based on their belief that "[the Finance Agency] cannot resurrect its discharged unsecured claim nor seek a new valuation of its secured claim." *Id.* The argument is circular, however. According to the Evoras, because the Finance Agency cannot seek a new valuation of its secured claim, the appeal is moot and because the appeal is moot, this Court cannot determine whether the Finance Agency can seek a new valuation.

Moreover, this appeal does not fit within the "equitable" or "pragmatic" mootness categories devised by the First Circuit. *See Hicks, Muse & Co., Inc. v. Brandt*, 136 F.3d 45, 48 (1st Cir.1998). Equitable mootness does not apply because the Finance Agency neither repeatedly ignored nor significantly delayed its right to seek a stay or an appeal. *See id.* The record shows that the Finance Agency filed an objection to the Motion, filed a Motion for Reconsideration upon denial of its objection, filed a Motion for Stay Pending Appeal, and finally filed this appeal. Likewise, the pragmatic mootness test is inapplicable because the Evoras have failed to demonstrate that an appeal cannot provide meaningful relief. *See id.*

Thus, the merits of this case are appropriately before this Court.

### B. Modification of Secured Claims

The Bankruptcy Court correctly summarized the Finance Agency's position when it stated "the Court finds that [the Finance Agency] is, in effect, seeking a determination that their allowed secured claim is no

longer $80,000 but a higher amount." *Evora*, 242 B.R. at 561. Essentially, the question before this Court is whether the Bankruptcy Code allows such a maneuver.

The Finance Agency's argument rests on two rather precarious building blocks. First, that the Evoras' September 3, 1999 Motion was a modification of the Plan pursuant to section 1329. Second, that plan modification mandates a revaluation of its claim.

 A Chapter 13 plan can be modified after confirmation upon the request of the debtor, the trustee, or the holder of an allowed unsecured claim. *See* 11 U.S.C. § 1329. Thus, by the statute's very terms, the Finance Agency, as a secured creditor, is precluded from seeking modification and must instead rely on the Evoras' motion to trigger section 1329. Once modification is sought by a named party, however, the amended plan must meet the statutory requirements contained in sections 1322(a), 1322(b), 1323(c), and 1325(a).

### 1. Modification

In the Evoras' Motion, they stated:

> The Property has a current appraised value of $156,000, whereas the outstanding balance owed by the Debtors to MHFA under the plan is $59,053.91. Thus, the proceeds of a refinancing pursuant to the Conditional Loan Commitment will be sufficient to cover the entire outstanding loan balance (plus closing costs). [The lender] shall remit such proceeds to the Chapter 13 Trustee as a one-time, lump sum payment in full satisfaction of all of the Debtors' obligations under the Plan, including their obligation to MHFA.

Motion to Approve Refinancing ¶ 4. In a footnote, the Evoras opined that because they planned to satisfy all the outstanding obligations under the Plan through a lump sum payment, "they [did] not believe that [it was] necessary to submit an amended Plan." *Id.* at 2 n. 2.

The Finance Agency relies on the one-time lump sum payment to support its assertion that the Motion *was* a modification. Section 1329 allows a plan to be modified to "extend or reduce the time for ... payments." 11 U.S.C. § 1329(a)(2). Because the Evoras sought to accelerate the payment schedule, thereby reducing the time over which payments were to be made, they were modifying the Plan. Or so the argument goes.

There is a certain simplistic logic to the Finance Agency's argument. Section 1329 is written in permissive and not mandatory language, however. While the Motion contains the reasons for the debtors' tender of payment, there is nothing in the language of the Bankruptcy Code to suggest that a one-time payment requires formal modification. The Finance Agency presents no case law to support its interpretation of the statute.

The Evoras' brief is similarly devoid of citations adequate to support their position. While the Evoras admit that the Motion fell within the literal language of section 1329(a)(2), they point to a footnote in *In re Martin* to support the proposition that it is not a modification of the Plan. *See In re Martin*, 232 B.R. 29, 32 n. 4 (Bankr. D.Mass.1999). In *Martin*, Judge Hillman stated "[a] motion to refinance is not the equivalent of a motion to modify a plan." *Id.* In isolation, the statement appears to support the Evoras' position. A closer examination of the context, however, reveals that Judge Hillman's statement is not one of substance, but one of procedure. In *Martin*, the Debtors brought a Motion to Refinance and then a Motion to Amend the Plan—to which the Trustee objected. *Id.* The Debtors argued that the Trustee was precluded from objecting to the Motion to Amend because he had not objected to the Motion to Refinance which set forth their intentions regarding the amended plan. The court disagreed and allowed the Trustee's objection. The statement on which the Evoras rely was not one of statutory interpretation but rather one of

procedure—that the Trustee's failure to object to the Motion to Refinance was not a *procedural* bar to an objection to the Motion to Amend. Thus, *Martin* does not squarely address the issue here.

Case law does exist on this issue, although admittedly it is sparse. In addition to its scarcity, it is confusing. Bankruptcy courts have arrived at vastly different results when faced with a debtor's motion to make a one-time lump sum payment. *Compare In re Guentert*, 206 B.R. 958, 961 (Bankr.W.D.Mo.1997) (motion to make lump sum payment is motion to modify), *and In re Easley*, 205 B.R. 334, 335 (Bankr.M.D.Fla.1996) (motion to complete payments is motion to modify), *with In re Bergolla*, 232 B.R. 515, 516 (Bankr. S.D.Fla.1999) (motion to make lump sum payment does not warrant modification), *and In re Smith*, 237 B.R. 621, 623 (Bankr. E.D.Tex.1999) (rejecting secured creditors attempt to construe lump sum payment as motion to modify). Although seemingly in conflict, these decisions can be harmonized.

■ When determining whether a motion is in fact a modification, courts examine the substance of the plan and the nature of the debtor's obligation to the debtor's creditors, not to the number of payments proposed. If a motion, whether or not styled as a motion to amend the plan, seeks to alter the substance of the plan, it is treated as a modification. This reconciles the varied results emanating from the particular bankruptcy courts. The outcome in each of these cases was dictated not by the number of payments but the *amount* to be paid to the *unsecured* creditors. *See In re Phelps*, 149 B.R. 534, 537 (Bankr.N.D.Ill.1993).

For example, in *Guentert*, the court construed a debtor's motion to make one lump sum payment as a modification of her Chapter 13 plan. *See* 206 B.R. at 961. The original plan, as mandated by the Code, called for the debtor to use all her disposable income over a three-year period to pay unsecured creditors forty-five per-

cent of their claims. *See id.* Through unfortunate circumstances, the debtor received the proceeds of a life insurance policy, which is considered disposable income under the Code, and sought to apply a portion of the proceeds to complete her Chapter 13 plan early. *See id.* The court denied the motion, reasoning that it had "no discretion to shorten the term of a thirty-six month Chapter 13 plan unless the plan, so shortened, pays unsecured creditors 100% of their claims." In short, the debtor sought to alter the substance of the plan in contravention of the Code by reducing the amount unsecured creditors received.

In contrast, the court in *Bergolla* concluded that there was no modification of the debtors' Chapter 13 plan even though they sought to pre-pay the amount due after only making five payments toward a sixty-month plan. *See* 232 B.R. at 516–17. To pay the balance of their plan early, the debtors used the proceeds from the sale of exempt property, in this case their home. *See id.* at 516. The home was otherwise unreachable by the creditors, thus its sale did not enhance the bankruptcy estate or in any way alter the amount the unsecured creditors would receive. In essence, the substance of the plan was not changed by the prepayment.

■ While the case law is not a model of clarity, it does provide a basis for the Court to review the facts of this case. Here, the Bankruptcy Court was presented with a motion to refinance that proposed to pay all the obligations under the Plan in full. The Finance Agency had an allowed secured claim of $80,000 calculated with nine percent interest over the life of the Plan to be almost $100,000. All unsecured claims, including the Finance Agency's, were discharged in the prior Chapter 7 proceeding. The Evoras wanted to pay the *entire* amount early, thus benefitting both the Evoras and the Finance Agency. The Motion was not in violation of the Code, nor did it purport to

alter the confirmed Plan to the detriment of the creditor. Indeed, given the time value of money, it is in the Finance Agency's best interest to receive the full amount early.

Given that the statute is permissive and the Motion did not purport to alter the confirmed Plan, it does not appear that the Motion was an implicit modification of the Plan. Because the case law is murky, however, this Court will follow the Bankruptcy Court's lead and proceed with the resulting analysis.

### 2. Revaluation

■ The Bankruptcy Court concluded even "assuming arguendo that the Debtors are in effect modifying their Chapter 13 plan to reduce the time for payments" there was "no authority for the proposition that this Court must, as a consequence, redetermine the amount of its secured claim." *Evora*, 242 B.R. at 561. This Court agrees.

There is nothing in the Bankruptcy Code nor case law to suggest that the Finance Agency's secured claim must be, or for that matter can be, redetermined. While section 1329(a)(1) provides that a plan may be modified to increase or reduce the amount of payments it does not state that the plan may be modified to increase or reduce the amount of the secured claim. *See* 11 U.S.C. § 1329(a)(1); *Chrysler Fin. Corp. v. Nolan*, 234 B.R. 390, 395–96 (M.D.Tenn.1999) (ruling that "straightforward interpretation" indicates that there can be no change in total amount to be paid); *In re Coleman*, 231 B.R. 397, 401 (Bankr.S.D.Ga.1999) (stating that section 1329[a] does not expressly permit revaluation of collateral); *In re Dunlap*, 215 B.R. 867, 870 (Bankr.E.D.Ark.1997) (ruling that section 1329 does not authorize modified plan to alter the amount of previously de-

termined secured claim); *In re Banks*, 161 B.R. 375, 378 (Bankr.S.D.Miss.1993) (same).

■ Moreover, valuation of a secured claim is adjudicated by the order of confirmation and a plan is considered res judicata as to claim determinations. *See* 11 U.S.C. § 1327(a) ("the provisions of a confirmed plan bind the debtor and each creditor ...."); *Cline v. Welch*, No. 97–5080, 1998 WL 773999 (6th Cir. Oct.11, 1998) (unpublished opinion) (binding effect extends to any issue necessarily determined by confirmation order);[3] *Ford Motor Credit Co. v. Stevens*, 130 F.3d 1027, 1029 (11th Cir.1997) (Ford bound by amount of secured claim defined at confirmation); *United States v. Richman*, 124 F.3d 1201, 1209 (10th Cir.1997) (the order confirming Chapter 13 plan is binding determination of rights of parties); *Nolan*, 234 B.R. at 396 (confirmation binding on creditors and debtors regarding total amount to be paid). Thus, valuation, in the context of reorganization, is fixed at the time of plan confirmation. *See Taras v. Commonwealth Mortgage Corp. of Am.*, 136 B.R. 941, 949 (Bankr.E.D.Pa.1992).

■ The Finance Agency concedes that while it filed a proof of claim in excess of $156,000, it made no objection to the Evoras valuation of the Property nor did it object to the Bankruptcy Court's determination of the allowed secured claim at $80,-000. *See* Appellant Brief at 9 ("Appellant's valuation was no more than debtor's valuation, and therefore no objection was filed to the motion to determine secured status."). It would appear then that section 1327 binds the Finance Agency to the amount allowed in the confirmed Plan. The Code does not provide a second bite at the apple.[4]

---

**3.** For the propriety of citing an unpublished opinion, *see Anastasoff v. United States*, 223 F.3d 898, 905 (8th Cir.2000) (Arnold, J.); *see also Giese v. Pierce Chemical Co.*, 43 F.Supp.2d 98, 106 (D.Mass.1999).

**4.** There are two situations where courts have found that the Chapter 13 plan was not binding on the creditor. *See In re Rodnok*, 197 B.R. 232, 235 (Bankr.E.D.Va.1996); *In re Moore*, 181 B.R. 522, 523 (Bankr.D.Idaho 1995). Neither situation is present in this

Undaunted, the Finance Agency turns to section 1325(a)(5) as a basis to redetermine its secured claim. If a plan is modified pursuant to section 1329, it must also meet the provisions of sections 1325(a). *See* 11 U.S.C. § 1329(b)(1). Section 1325(a)(5) is the principal protection for secured creditors in Chapter 13. It states that a confirmed plan must provide for, *inter alia,* "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). The Finance Agency argues that when read together, sections 1329(b)(1) and 1325(a)(5)(B)(ii) require that the allowed amount of a claim be redetermined when a plan is modified.

This argument is without support. First, there is nothing in the statute that suggests that an allowed secured claim must be redetermined. Indeed, to read section 1325 as requiring revaluation of a secured claim would conflict with the current judicial interpretations of sections 1327 and 1329. It would be difficult to reconcile two Code provisions that state that a determination of an allowed secured claim is binding with a Code provision that mandated redetermination of the value of an allowed secured claim at a later date.

In addition, there is no case law that endorses the Finance Agency's reading of the statute. There are, however, a number of courts that have adopted the opposite view. *See, e.g., Stevens,* 130 F.3d at 1029; *Talbot,* 124 F.3d at 1209; *Nolan,* 234 B.R. at 395; *In re Meeks,* 237 B.R. at 861; *Coleman,* 231 B.R. at 400; *Banks,* 161 B.R. at 378; *In re Abercrombie,* 39 B.R. 178, 179 (Bankr.N.D.Ga.1984). The

court in *Meeks* succinctly phrased the outcome of these cases:

> A debtor who decides to retain the collateral at a confirmation hearing is entitled to any later appreciation in value but also must suffer any resulting depreciation or loss. The allowed amount of the secured claim is fixed at confirmation and is not subject to post confirmation modification.

*Meeks,* 237 B.R. at 861–62.

The majority of cases that deal with this question occur in the context of collateral depreciation. *See Meeks,* 237 B.R. at 861; *Coleman,* 231 B.R. at 399; *Dunlap,* 215 B.R. at 870; *Banks,* 161 B.R. at 378; *Abercrombie,* 39 B.R. at 179. In those instances, debtors are seeking to reclassify a formerly secured claim as partially unsecured to reflect the change in the value of the property. Courts have almost uniformly rejected this proposition concluding that the Code does not allow for a change in the amount to be paid. The courts reason that this "attributes to Congress an unlikely intention to give the debtors the option to shift to holders of allowed secured claims any loss in the value of collateral." *Coleman,* 231 B.R. at 399 (quoting Norton Bankruptcy Law and Practice 2d, § 124:3 n. 79, at 124–27 [1993]).

Because it is a rare occurrence in the context of bankruptcy, few cases deal with the appreciation of collateral. The courts that have addressed this issue have held that appreciation does not alter the amount of the secured claim. *See Stevens,* 130 F.3d at 1030; *Talbot,* 124 F.3d at 1209; *Moore,* 181 B.R. at 525. The opinion in *Talbot* is instructive. There the debtors filed for Chapter 13 relief and the IRS filed a proof of claim for pre-petition in-

---

case. First, some courts have been reluctant to bind a creditor to the value of collateral stated in a confirmed plan without the creditor receiving adequate notice because it violates due process requirements. *See Rodnok,* 197 B.R. at 235. There is no question that the Finance Agency received notice here. Second, if a debtor fails to object to the proof of claim filed by the creditor, the proof of

claim is presumptively the amount of the secured claim and it may not be reduced by the Chapter 13 plan. *See Moore,* 181 B.R. at 523. The Finance Agency does not argue that this is the case here. Moreover, from the record it appears that after the Finance Agency filed its proof of claim, the Evoras sought a determination by the Bankruptcy Court of the value of the secured claim.

come taxes in the amount of $37,660. *See Talbot,* 124 F.3d at 1204. The debt was secured by a tax lien that had attached to the debtors' home. The home was valued at $77,000. Using the undisputed valuation, the IRS asserted that $18,674 of its claim was secured.

After twenty months, the debtors sold their home for $137,500, substantially more than the original value assigned it at confirmation of the plan. *See id.* The IRS, based on the appreciation, attempted to obtain full satisfaction of the entire debt. The court rejected this notion stating "the IRS was entitled to no more and the Talbots were obligated to pay no less than the amounts set out in the Plan and confirmation order." *Id.* at 1209.

■ The Court is persuaded by the reasoning contained in these decisions. Both debtors and creditors are bound by the amount of allowed secured claims set forth in the plan. Just as debtors must shoulder the loss associated with depreciation, so must creditors assume the loss accompanying appreciation. To hold otherwise would provide no finality to a confirmed plan and would subject both creditors and debtors to the whims of the market.

## V. CONCLUSION

Based on the foregoing the decision of the Bankruptcy Court is AFFIRMED [Docket # 14].