SELYA, Circuit Judge.
 

 Repco Printers & Lithographies, Inc. (Repeo) asserts a right to retain a payment made to it by Healthco International, Inc.
 
 *106
 
 (Healthco) shortly before Healthco commenced insolvency proceedings. The bankruptcy court agreed with Repeo but the Bankruptcy Appellate Panel of the First Circuit (BAP) did not. Repco appeals. After ironing out a procedural wrinkle, we uphold the BAP’s core determination that the disputed payment was not a transfer “in the ordinary course of business” within the meaning of 11 U.S.C. § 547(c)(2)(1994). Nevertheless, because the BAP misgauged the posture of the case, we vacate its judgment and remand for further proceedings.
 

 I. BACKGROUND
 

 We draw our account from the stipulated record, which is comprised of twenty-five uncontested statements of fact and thirteen exhibits (including various depositions and affidavits).
 

 In better days, Healthco functioned as a major distributor of dental equipment and supplies. In August 1992, James Mills, chief executive officer of Healthco’s parent company, contacted Fred Zaegel, Repco’s owner, to explore a business relationship. Mills, who knew Zaegel both professionally and socially, proposed that Repco (headquartered in St. Louis) print Healthco’s product catalog. Zaegel agreed. From that time forward, Repeo handled virtually all of the diverse printing needs of Boston-based Healthco.
 

 During this interlude, Repco extended credit to Healthco in accordance with standard printing industry practice: Repco would bill contemporaneously for each service, and would anticipate receiving payment in sixty days, on average, notwithstanding contrary credit terms expressed in its invoices.
 
 [1]
 
 For its part, Healthco customarily would accumulate invoices and then pay some (but not all) of the accumulation by mailing Repco a lump-sum company check. Over the period from the fall of 1992 until early April of the following year, Healthco paid one hundred fourteen Repeo invoices with sixteen different checks, totalling around $400,000.
 

 Whenever Repeo’s cash flow ebbed, it was Zaegel’s practice to contact customers and solicit payment of outstanding invoices that were at least sixty days old. To this end, Zaegel called Healthco’s treasurer, Arthur Souza,- on four occasions. Each time, Souza arranged for a check to be cut shortly thereafter.
 

 Despite these periodic payments, some of Repco’s unrequited invoices were almost two hundred days old by late March. Zaegel tried to prompt Souza once again, but experienced difficulty in reaching him. Zaegel then called Healthco’s chief financial officer, James Moyle. Zaegel, who never before had made a dunning call to Moyle, politely informed him that Healthco was holding numerous Repeo invoices that were substantially overdue.
 
 [2]
 
 At the conclusion of this five-minute conversation, Moyle stated that he would investigate the matter.
 

 Moyle vouchsafed in his affidavit that he considered Repco to be “Healthco’s most pivotal vendor in the company’s effort to overcome its financial problems,” presumably because Repco was about to undertake the printing and distribution of Healthco’s quarterly catalog. He asked Souza how much Healthco owed Repco and what was “the fastest way” to pay the debt. Souza replied that Healthco had in hand $235,558.64 in outstanding Repco invoices and that wire transfer would be the quickest payment method. Moyle directed Souza to wire the full amount. Repco received the funds on April 13, 1993. That payment satisfied in one fell swoop sixty-eight invoices ranging from brand new to two hundred days old.
 

 Healthco sought the protection of the bankruptcy court on June 9, 1993. The firm’s ledgers disclosed that it had made only two other wire transfers in satisfaction of antecedent debts during the previous ninety days. The record confirms that Healthco’s
 
 *107
 
 trustee in bankruptcy, William A. Brandt, Jr., successfully challenged both of the other payments as voidable preferences.
 

 II. PROCEDURAL HISTORY
 

 In due season, the trustee brought this adversary proceeding seeking to recover the $235,558.64 payment. Repco defended on three grounds: (1) that Healthco was solvent at the time of the transfer, (2) that the transfer was “made in the ordinary course of business” within the meaning of 11 U.S.C. § 547(c)(2), and (3) that in all events Repco’s services provided “subsequent new value” within the meaning of 11 U.S.C. § 547(c)(4). The parties stipulated that Repco had conferred new value in the amount of $31,977.38, reducing the trustee’s claim against Repco to $203,581.26 and removing the “new value” issue from the case. , The bankruptcy court then bifurcated the two remaining issues, reserving the solvency question for later adjudication and proceeding to tackle the applicability
 
 vel non
 
 of Repco’s “ordinary course of business” defense.
 

 The parties cross-moved for summary judgment on this issue. After the bankruptcy court denied both motions, the parties submitted the issue on the stipulated record described above. On July 17,1996, the bankruptcy court dismissed the trustee’s complaint. The court’s two-paragraph rescript reads in its entirety:
 

 A trial was scheduled in this matter for May 1, 1996. However, the parties filed a motion to submit the matter on stipulated facts and exhibits, which was granted on April 20,1996.
 

 In consideration of said facts and exhibits, the complaint is dismissed by virtue of the ordinary course of business defense. A separate order will issue.
 

 The trustee filed a timely notice of appeal and the parties opted to have the appeal heard by the BAP (in lieu of the district court).
 
 [3]
 
 For reasons that are not readily apparent, the parties mutually invited de novo review of the bankruptcy court’s deeision. The .BAP accepted the invitation, determined that the wire transfer had not been made in the ordinary course of business, and ruled that the payment was “preferential, and subject to recovery by the Trustee under Section 547.”
 
 Brandt v. Repco Printers & Lithographics, Inc. (In re
 
 Healthco), No. MW 96-026, slip op. at 12 (1st Cir. BAP 1997). This appeal ensued.
 

 III. STANDARD OF REVIEW
 

 Bankruptcy cases differ from most other federal cases in that the court of appeals does not afford first-instance appellate review. Rather, Congress has provided for intermediate review, conferring on district courts and federal bankruptcy appellate panels the authority to hear appeals from bankruptcy court decisions, but preserving to the parties a right of further review in the courts of appeals.
 
 See
 
 28 U.S.C. § 158. Whether such an appeal comes to us by way of the district court or the BAP, our regimen is the same: we focus on the bankruptcy court’s decision, scrutinize that court’s findings of fact for clear error, and afford de novo review to its conclusions of law.
 
 See Martin v. Bajgar (In re
 
 Bajgar), 104 F.3d 495, 497 (1st Cir.1997);
 
 Grella v. Salem Five Cent Sav. Bank,
 
 42 F.3d 26, 30 (1st Cir.1994). Since this is exactly the same regimen that the intermediate appellate tribunal must use, we exhibit no particular deference to the conclusions of that tribunal (be it the district court or the BAP).
 
 See Palmacci v. Umpierrez,
 
 121 F.3d 781, 785 (1st Cir.1997).
 

 We now move from the general to the specific. The crucial issue in this adversary proceeding revolves around Repco’s access to the “ordinary course of business” defense under 11 U.S.C. § 547(c)(2). A bankruptcy court’s construction of this statute presents.a question of law and thus engenders plenary review.
 
 See Fidelity Sav. & Inv. Co. v. New Hope Baptist,
 
 880 F.2d 1172, 1174 (10th Cir.1989). A bankruptcy court’s assessment in connection with whether the statutory defense appertains in a given case
 
 *108
 
 is a horse of different hue; the findings which collectively comprise such an assessment are factbound and thus engender dear-error review.
 
 See Yurika Foods Corp. v. United Parcel Serv. (In re Yurika Foods Corp.),
 
 888 F.2d 42, 45 (6th Cir.1989). Here, the court’s rendition of the statute is unexceptional and the only justiciable issue relates to whether the challenged transfer, as a factual matter, comes within the statutory sweep. Hence, the bankruptcy court’s decision normally would be reviewable for clear error. This means, of course, that a reviewing court “ought not to upset findings of fact or conclusions drawn therefrom unless, on the whole of the record, [the appellate judges] form a strong, unyielding belief that a mistake has been made.”
 
 Cumpiano v. Banco Santander P.R.,
 
 902 F.2d 148, 152 (1st Cir.1990).
 

 This familiar standard is not diluted merely because parties proceed on a stipulated record. We long have held that a bankruptcy court’s factual findings are entitled to the deference inherent in dear-error review even when they do not implicate live testimony, but, rather, evolve entirely from a paper record that is equally available to the reviewing court.
 
 See Boroff v. Tully (In re
 
 Tully), 818 F.2d 106, 109 (1st Cir.1987) (citing
 
 Anderson v. City of Bessemer City,
 
 470 U.S. 564, 574-75, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985));
 
 see also RCI Northeast Servs. Div. v. Boston Edison Co.,
 
 822 F.2d 199, 202 (1st Cir.1987) (explaining that “findings of fact do not forfeit ‘clearly erroneous’ deference merely because they stem from a paper record”).
 
 [4]
 
 The soundness of this approach is confirmed by Rule 7052 of the Federal Rules of Bankruptcy Procedure, which expressly adopts Rule 52(a) of the Federal Rules of Civil Procedure. The latter rule, in its latest incarnation, provides in pertinent part: “Findings of fact,
 
 whether based on oral or documentary evidence,
 
 shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.” (Emphasis supplied).
 

 Notwithstanding the obvious applicability of the “clearly erroneous” standard to the case at hand, there is a rub. The parties both urged the BAP to review the bankruptcy court’s decision de novo and to resolve the issue of whether Healtheo’s transfer of funds to Repco escapes classification as a preference without affording any special respect to the bankruptcy court’s factual determinations. The BAP yielded to this importuning.
 
 See In re Healthco, supra,
 
 slip op. at 5. What is more, the litigants are united in their insistence that we, too, should essay plenary, nondeferential review of the bankruptcy court’s decision.
 

 Under these peculiar circumstances, we are tempted simply to honor the parties’ request.
 
 Cf. United States v. Taylor,
 
 54 F.3d 967, 971 (1st Cir.1995) (warning that “[t]he problem with wishes is that they sometimes come true”) (citing Aesop). For one thing, the bankruptcy court’s failure to articulate any particularized factual findings not only contradicts the rules of practice,
 
 see
 
 Fed. R. BankrP. 7052 (adopting Fed. R.Civ.P. 52(a)’s requirement that “the court shall find the facts specially”), but also makes elear-error review exceptionally difficult.
 
 [5]
 
 For another thing, the parties invited the BAP to indulge in de novo review and, at oral argument in this court, they continued to urge that we follow that course. Declining to do so would risk “plac[ing] a premium on
 
 *109
 
 agreeable acquiescence to perceivable error as a weapon of appellate advocacy.”
 
 Dedham Water Co. v. Cumberland Farms Dairy, Inc.,
 
 972 F.2d 453, 459 (1st Cir.1992) (quoting
 
 Merchant v. Ruble,
 
 740 F.2d 86, 92 (1st Cir.1984)).
 

 This is an interesting concatenation of events, but we need not decide whether we should hold the parties to the invited error; in this instance, all roads lead to Rome because our choice between the two standards of review will not affect the outcome on appeal. In short, this case is sufficiently plain that, whether we bow to the parties’ wishes and afford de novo review or bow to convention and employ the more deferential “clearly erroneous” rubric, we, like the BAP, would be compelled to set aside the bankruptcy court’s contrary determination.
 

 IV. THE MERITS
 

 In order to guard against favoritism in the face of looming insolvency, the Bankruptcy Code provides that certain payments made by the debtor within ninety days preceding the institution of bankruptcy proceedings are voidable as preferences.
 
 See
 
 11 U.S.C. § 547(b). This rule is not ironclad. Thus, the Code holds harmless transfers made by the debtor during the ninety-day preference period if certain criteria are satisfied. Specifically, a bankruptcy trustee may not annul a preference-period transfer to the extent that the transfer was
 

 (A) in payment of a debt incurred by the debtor in the ordinary course of business ... [between] the debtor and the' transferee;
 

 (B) made in the ordinary course of business ... of the debtor and the transferee; and
 

 (C) made according to ordinary business terms[.]
 

 11 U.S.C. § 547(c)(2). The rationale behind this carve-out is clear: because “the general policy of the preference section [is] to discourage unusual action by either the debtor or his creditors during the debtor’s slide into bankruptcy,” the ordinary course exemption promotes the corresponding congressional desire “to leave undisturbed normal financial relations.” H.R.Rep. No. 595 (1977),
 
 reprinted in
 
 1978 U.S.C.C.A.N. 5963, 6329.
 

 The statute itself is uninstructive as to the definition of the term “ordinary course of business.” Courts abhor interpretive vacuums, and they have filled this one, articulating several factors that bear upon whether a particular transfer warrants protection under section 547(e)(2). These factors include the amount transferred, the timing of the payment, the historic course of dealings between the debtor and the transferee, and the circumstances under which the transfer was effected.
 
 See In re Yurika Foods,
 
 888 F.2d at 45;
 
 First Software Corp. v. Curtis Mfg. Co. (In re First Software Corp.),
 
 81 B.R. 211, 212 (Bankr.D.Mass.1988). After considering the record evidence in light of these factors, we are firmly convinced that the transfer from Healthco to Repco was éxtraordinary and that the bankruptcy court clearly erred in finding otherwise. We explain briefly.
 

 The amount of the payment was uncommonly large; Healthco never before had made a lump-sum payment to Repco in an amount approaching $235,000.
 
 [6]
 
 Put another way, the payment was nearly ten times as, large as the average of the payments previously made by the debtor to Repco. Then, too, the timing of the payment was highly suspicious. It lumped old and new bills, and in the process, liquidated several invoices that were by accounting standards ancient (i.e., more than ninety days old) and several that were prepubescent (i.e., less than thirty days old).
 
 [7]
 
 There were, moreover, virtually
 
 *110
 
 no significant similarities between the challenged payment and the antecedent course of dealings between the parties. For example, the disputed transfer marked the first occasion that Healthco ventured to pay all its outstanding Repco invoices, the first time that Healthco wired funds to Repco, and the first time that Healthco’s chief financial officer interceded to effectuate a payment to Repco. Inasmuch as the hallmark of a payment in the ordinary course is consistency with prior practice,
 
 see WJM, Inc. v. Masseschusetts Dep’t of Pub. Welfare,
 
 840 F.2d 996, 1011 (1st Cir.1988), this string of “firsts” is telling.
 

 The circumstances surrounding the wire transfer clinch the matter. Healthco owed money to hundreds of creditors. Of these, it paid only Repco, Kerr Manufacturing, and Clarke Industries in full by wire transfer during the preference period. All three of these businesses had detectable links to Healtheo’s principals: Thomas Hicks, chairman and chief executive officer of the firm that owned Healthco Holding Co. (which, in turn, owned Healthco), was a director and beneficial owner of Kerr’s parent corporation; James Mills, chairman of Healthco Holding Co., chaired the board of Clarke’s parent company and served as its chief executive officer; and as mentioned above, Mills also had a longstanding relationship with Repco’s proprietor. Apart from these special relationships, there is no reasonable explanation for preferment of the three creditors. This is especially true of Repco; as Zaegel himself testified during his deposition, it is general industry custom to “pay the printer last.”
 

 Other circumstances associated with the challenged transfer highlight the importance of Repco’s special relationship. Souza, Healtheo’s treasurer, testified that by February 1993 decisions about which creditors were to be paid when were being made by a committee of Healthco executives; yet Moyle overrode this mechanism to effect the Repco payment. At the same time, it was clear both from Zaegel’s kid-glove approach and from the competitive nature of the printing industry that Repco’s continued service did not hinge upon Healthco’s payment of all outstanding debt as celeritously as possible. Thus, Moyle’s claim that he directed the payment to be made because Repco was “pivotal” to Healtheo’s operations is entitled to very little weight.
 

 We need go no further. The circumstantial evidence fully persuades us that the debtor deviated sharply from its customary business practices to favor a select trio of creditors, Repco included. This is precisely the type of preferment — taking care of a few well-connected vendors while playing hardball with the general multitude — that the drafters of the Bankruptcy Code intended to curtail.
 
 See Lawson v. Ford Motor Co. (In re Roblin Indus.),
 
 78 F.3d 30, 40 (2d Cir.1996) (explaining that “equality of distribution among creditors of the debtor” is one goal of the preference provision) (quoting legislative history).
 
 [8]
 

 Repco’s other arguments are unconvincing and we reject them without elaboration. It suffices to say that the circumstances surrounding the challenged transfer amply evince its extraordinary nature. Therefore, we affirm the BAP’s determination that, contrary to the bankruptcy court’s view, the challenged transfer was not made in the ordinary course of business.
 

 Unlike the BAP, however, we do not believe that such a determination clears the way for judgment on the trustee’s claim. The bankruptcy court reserved the issue of Healthco’s insolvency — an essential element of the preference claim — and that issue remains open. Consequently, we must vacate the BAP’s judgment to that extent and remand to the BAP with directions that it, in turn, remand the cause to the bankruptcy court for further proceedings.
 

 Affirmed in part, vacated in part, and remanded. No costs.
 

 [1]
 

 . Repco’s invoices bore a net ten days legend. The record reflects, however, that this credit term was honored mainly in the breach; most of Repco’s customers (and, indeed, the majority of firms purchasing services in the competitive printing industry) ignored this stricture.
 

 [2]
 

 . The record indicates that Zaegel was unaware of Healthco’s financial problems at this time; that he discussed the past-due invoices cordially with Moyle; and that he neither threatened to cut off printing services nor demanded an immediate payment. '
 

 [3]
 

 . In this circuit, bankruptcy appellate panels have had a mixed history. After a short-lived experiment, the use of such panels was discontinued in 1983. The First Circuit Judicial Council revivified the BAP structure on July 1, 1996, giving interested parties the option of electing intermediate appellate review before a BAP panel rather than before a federal district court.
 

 [4]
 

 . To be sure, occasional statements of this court, if wrested from context, might appear to suggest de novo review in such circumstances.
 
 See, e.g., Brewer v. Madigan,
 
 945 F.2d 449, 452 (1st Cir.1991). Context provides a clearer perspective. In the cases in which we purposed to scrutinize a paper record de novo,
 
 there were no facts in dispute.
 
 Although a stipulated record sometimes will indicate the absence of factual discord, that is far from universally true.
 
 See Vetter v. Frosch,
 
 599 F.2d 630, 632 (5th Cir.1979) ("Many cases are tried on depositions, counter-affidavits, and stipulated records, where the parties know there are issues of fact which must be resolved, but are content to have them resolved on the basis of written, as opposed to oral, testimony and evidence.”). Here, the existence of genuine factual issues is made manifest by the bankruptcy court’s well-founded denial of the parties’ cross-motions for summary judgment.
 

 [5]
 

 . Of course, if a reviewing court determines that a bankruptcy court’s findings are too indistinct, it may decline to proceed further and remand for more explicit findings. This avenue was open to the BAP and it is equally open to us.
 

 [6]
 

 . To be sure, as Repco points out, the magnitude of the payment is attributable in some measure to a single invoice in the sum of $96,689.19. This circumstance does not contradict the conclusion that the payment was abnormal. The fact remains that Healthco remitted over $235,-000 in satisfaction of sixty-eight separate Repco invoices, thereby dwarfing earlier remittances as to both the number of invoices and the total dollars involved.
 

 [7]
 

 . As the BAP noted, roughly fifty percent of the invoices satisfied by the wire transfer fell into one of these two categories.
 
 See In re Healthco, supra,
 
 slip op. at 10. By contrast, very old and very new invoices comprised no more than fifteen percent of any group of invoices previously paid.
 

 [8]
 

 . The other main goal of the preference provision — precluding the debtor “from trying to stave off the evil day by giving preferential treatment to his most importunate creditors,”
 
 In re Tolona Pizza Prods. Corp.,
 
 3 F.3d 1029, 1032 (7th Cir.1993) — is not implicated here.
 
 See supra
 
 note 2.