In re Mary MUESSEL, Debtor.

Mary Muessel, Appellant,

v.

Denise Pappalardo, Chapter 13 Trustee, and Massachusetts Housing Finance Agency, Appellees.

BAP Nos. MW 02–015, MW 02–035. Bankruptcy No. 98–44926–JBR.

United States Bankruptcy Appellate Panel of the First Circuit.

May 13, 2003.

David G. Baker, Esq., Boston, MA, on brief for the Appellant.

Denise M. Pappalardo, Esq., Worcester, MA, and Joanne Psilos, Esq., on brief for the Appellee, Chapter 13 Trustee.

Patricia Antonelli, Esq. and Tracy C. Baran, Esq. of Partridge Snow & Hahn LLP, Providence, RI, on brief for the Appellee, Massachusetts Housing Finance Authority.

HAINES, CARLO, and DEASY, U.S. Bankruptcy Appellate Panel Judges.

PER CURIAM.

In this consolidated appeal, Mary Muessel (the "Debtor"), appeals the bankruptcy court's orders that she may refinance her residence and make a lump sum payment to the Chapter 13 trustee (the "Trustee"), but that she is required to amend her confirmed Chapter 13 plan to provide for a one hundred percent (100%) dividend to unsecured creditors; and that the bankruptcy court incorrectly dismissed her Chapter 13 case while an appeal was pending.

## I. Jurisdiction and Standard of Review

The bankruptcy court's orders granting in part and denying in part the Debtor's motion for leave to obtain credit and dismissing the Debtor's Chapter 13 case are final appealable orders. *See In re Saco Local Dev. Corp.*, 711 F.2d 441 (1st Cir.1983) (discussing bankruptcy appellate panel jurisdiction). The Bankruptcy Appellate Panel (the "Panel") has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1) and (b).

A bankruptcy court's conclusions of law are reviewed *de novo*. *See, e.g., Prebor v. Collins (In re I Don't Trust)*, 143

F.3d 1, 3 (1st Cir.1998); *Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 107 (1st Cir.1997).

## II. Background

On June 30, 1998, the Debtor filed a Chapter 13 bankruptcy petition in Massachusetts. Her plan was confirmed on December 18, 1998 and provided for monthly payments of $1,403.00 commencing September 28, 1998 for sixty months with a minimum dividend to unsecured creditors of ten percent (the confirmation order also provided for the sale of the Debtor's investment property located in Fitchburg, Massachusetts). Additionally, the Debtor's plan modified the claim of Massachusetts Housing Finance Agency ("MHFA"), the holder of a first mortgage on a three family building, part of which was the Debtor's residence. MHFA's claim was bifurcated into a secured claim of $75,000.00 plus interest at the rate of 9.5% for a total secured claim of $94,508.40 and an unsecured claim of $40,342.06.

On June 15, 2000, the Debtor's plan was amended to adjust the plan for claims as filed and allowed. The amended plan provided for monthly payments of $1,953.55 commencing June 25, 2000 for fifty-four months with a minimum dividend to unsecured creditors of ten percent (the "Second Confirmation Order"). In addition, the Second Confirmation Order provided that "any appreciation in the value of real property owned by the debtor as of the commencement of the case, shall remain property of the estate during the term of the plan and shall vest in the debtor only upon the discharge." *See* Trustee's Appendix at A–2.

On September 18, 2001, the Trustee filed a Motion to Dismiss due to the Debtor's failure to make plan payments. As of the date of the Motion to Dismiss, the Debtor was in arrears in the amount of $15,628.35.[1] At the hearing for the Motion to Dismiss, the Debtor filed a Motion for Leave to Obtain Credit and proposed to cure the arrears in plan payments and pay off the plan through the refinance of the property in the amount of $85,000.00. This would have boosted the dividend to the unsecured creditors from ten percent to one hundred percent. The Debtor withdrew her motion before the hearing date. The Debtor then filed her second Motion for Leave to Obtain Credit (the "Motion to Refinance"), this time with a different lender and on more favorable terms and in the amount of $52,000.00. *See* Appellee's Appendix at A–9. The Debtor's new motion still proposed to pay off her plan, however, the unsecured creditors would only get the ten percent dividend provided for in her confirmed plan and any remaining proceeds would be used by the Debtor to pay postpetition obligations. Both the Trustee and MHFA objected to the Debtor's new motion. The Debtor did not disclose the appraised value of the property. Following a court order to do so, the Debtor filed the appraisal giving a fair market value of the property, as of January 11, 2002, of $114,000.00. *See* Appellee's Appendix at A–9. This is an appreciation in the value of the property of $39,000.00 from the commencement of the case or approximately sixty-six percent.

On February 19, 2002, the bankruptcy court held a hearing on the Motion to Refinance. The Trustee filed a Supplemental Objection to Debtor's Motion for Leave to Obtain Credit on March 1, 2002.

---

1. At this time the Debtor had completed thirty-two plan payments and was eight plan payments in arrears.

It was the Trustee's position that the Motion to Refinance constituted a plan modification under § 1329(a) of the Bankruptcy Code.[2] Additionally, the Trustee believed that the substantial increase in value of the property necessitated a dividend of one hundred percent for unsecured creditors in order for the modified plan to meet the best interest test under § 1325(a)(4). *See* Trustee's Appendix at A–11.

On March 7, 2002, the bankruptcy court entered an order granting the Motion to Refinance to the extent that one hundred percent of the loan proceeds, net of closing costs, were to be paid to the Trustee to satisfy the secured claim held by MHFA, with the balance to be applied to any plan payment arrears (the "Refinance Order").[3] The Refinance Order also provided that (1) the refinance and payment of the proceeds to the Trustee would not be deemed completion of Debtor's plan; and following the closing of the refinance, the Debtor would (2) file amended Schedules I and J, and (3) an amended Chapter 13 plan which would provide for a one hundred percent dividend to unsecured creditors. *See* Trustee's Appendix at A–12. On March 8, 2002, the Debtor filed a notice of appeal of the Refinance Order.

On May 28, 2002, during the pendency of the Debtor's appeal, the Trustee filed a second motion to dismiss the case (the "Second Motion to Dismiss"). *See* Appellant's Appendix at A–1. The Second Motion to Dismiss alleged that the Debtor's

failure to comply with the Refinance Order constituted grounds for dismissal under §§ 1307(c) and 109(g), because the Debtor never filed a motion for stay pending appeal. On June 25, 2002, after a hearing, the bankruptcy court denied the Second Motion to Dismiss, but entered an order dismissing the case (the "Dismissal Order"). *See* Order of Dismissal, Appellant's Appendix at A–5. The Debtor timely filed a notice of appeal of the Dismissal Order. On motion by the Debtor, both appeals were consolidated.

For the reasons set forth in this opinion, the Panel shall vacate the Refinance Order and the Dismissal Order and remand the case to the bankruptcy court for further proceedings.

### III. Discussion

#### A. The Refinance Order

■■■ Only a debtor may propose a Chapter 13 plan. *In re Woods*, 257 B.R. 876, 877 (Bankr.W.D.Tenn.2000) (stating that debtor is the sole person responsible for proposing a plan); *In re McNichols*, 255 B.R. 857, 879 (Bankr.N.D.Ill.2000) (holding that it is not the function of the court to propose a Chapter 13 plan that will ultimately be confirmed); *In re Euler*, 251 B.R. 740, 745 (Bankr.M.D.Fla.2000) (no authority under the Bankruptcy Code for either a Chapter 13 trustee or a creditor under any circumstances to file a plan).

---

**2.** All references to "Bankruptcy Code" or to statutory sections are to Title 11 of the United States Code unless otherwise indicated.

**3.** The Refinance Order provided:

> # 74   Debtor's Motion for Leave to Obtain Credit (option one) is allowed to the extent that Debtor may refinance her residence as requested, provided that (a) 100% of the proceeds (net of closing costs) are to be paid to the Chapter 13 Trustee to first satisfy the remaining secured claim of Mass

> Housing, with the balance to be applied to the arrears under the Second Confirmation Order; (b) this refinance and payment shall *not be deemed* completion of Debtor's Plan Payments. Immediately upon completion of the refinance, Debtor shall (within 10 days) file an Amended Plan and Amended Schedules "I" and "J", which Plan, based upon the appraisal submitted, should provide for a 100% dividend to unsecured creditors. (emphasis in the original).

Only a debtor may amend a Chapter 13 plan prior to confirmation. *See* 11 U.S.C. § 1323(a); *Euler,* 251 B.R. at 746 n. 6. Only after confirmation of a Chapter 13 plan may a party other than the debtor request modification of a Chapter 13 plan. *See* 11 U.S.C. § 1329(a) (permitting the Chapter 13 trustee and the holder of an unsecured claim to request modifications to a confirmed Chapter 13 plan).

The parties frame one of the issues in this appeal as whether the Motion to Refinance constitutes a modification of the Debtor's confirmed Chapter 13 plan. However, the Panel need not reach this issue. Both the Trustee and MHFA could have filed motions seeking to modify the Debtor's confirmed Chapter 13 plan, but did not do so. The record on appeal does not indicate that the bankruptcy court ever explicitly decided that the Motion to Refinance constituted a request by the Debtor to modify the confirmed Chapter 13 plan. Although the language in the Refinance Order strongly implies that the bankruptcy court made such a ruling,[4] the Refinance Order also directs the Debtor to file an amended Chapter 13 plan. In any event, the Panel need not and shall not endeavor to read the tea leaves in either the record on appeal or the Refinance Order.

The Refinance Order expressly directs the Debtor to file an amended Chapter 13 plan providing a one hundred percent dividend for unsecured creditors. Nothing in the Bankruptcy Code authorizes the bankruptcy court to either draft or dictate the provisions of a Chapter 13 plan. While the bankruptcy court has broad equitable powers to implement the provisions of the Bankruptcy Code, such powers are not unlimited. *Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.),* 67 F.3d 1021, 1028 (1st Cir.1995). The bankruptcy court's exercise of its residual equitable powers must be connected to, and advance the purposes of, specific provisions in the Bankruptcy Code. *Id.* The Bankruptcy Code expressly limits the universe of persons who may propose or request modification of a confirmed Chapter 13 plan to the debtor, the Chapter 13 trustee and unsecured creditors. 11 U.S.C. § 1329(a). The bankruptcy court is statutorily excluded from that universe of persons.

The bankruptcy court could have, after appropriate findings on the record: (1) denied the Motion to Refinance as a thinly disguised attempt by the Debtor to modify her confirmed Chapter 13 plan outside of the requirements of § 1329 of the Bankruptcy Code; or (2) denied the Motion to Refinance for failure to satisfy the requirements of § 1329(b) of the Bankruptcy Code. However, the bankruptcy court did not use either alternative. What the bankruptcy court did was to partially grant the Motion to Refinance and direct the Debtor to file an amended Chapter 13 plan containing a specified dividend for unsecured creditors.

The provisions in the Refinance Order requiring the Debtor to file an amended Chapter 13 plan providing a one hundred percent dividend to unsecured creditors exceeded the bankruptcy court's legal and equitable powers under the Bankruptcy Code and shall be vacated. Accordingly, the Panel need not consider the other is-

---

4. The Panel notes that the determination of whether the Motion to Refinance is in fact a modification would require the bankruptcy court to examine the substance of the confirmed Chapter 13 plan, the nature of the Debtor's obligations to the Debtor's creditors and whether the motion seeks to alter the substance of the plan or the nature of the obligations. *See Mass. Housing Fin. Agency v. Evora,* 255 B.R. 336, 342 (D.Mass.2000). The record does not reflect that the bankruptcy court ever made such an examination.

sues raised by the parties in connection with that order.

### B. The Dismissal Order

■ On June 25, 2002, the bankruptcy court held a hearing on the Second Motion to Dismiss. The Trustee asserted in her motion that the Debtor had failed to comply with the Refinance Order. In her response, the Debtor admitted to not complying with the Refinance Order, stating that compliance was impossible because the Refinance Order stated that the refinancing would not complete her obligations under her plan, a condition that voided the refinancing lender's commitment letter. *See* Appellant's Appendix, Debtor's Objection to Trustee's Motion to Dismiss Case and Cross-motion for Partial Relief From Judgment. At the hearing, the bankruptcy court noted that because the appeal of the Refinance Order was pending, it did not have jurisdiction to hear the Trustee's motion. *See* Appellant's Appendix, Hearing Transcript at 3. However, the court then entered the Dismissal Order, dismissing the case, *sua sponte*, with prejudice under § 109(g)(1), for failure to stay current on plan payments under the confirmed Chapter 13 plan.[5] *Id.* at 6.

The Panel agrees that the bankruptcy court did not have jurisdiction to hear the Second Motion to Dismiss while the appeal of the Refinance Order was pending. *See Needham St. Inv. Trust v. FBI Distrib. Corp. (In re FBI Distrib. Corp.)*, 267 B.R. 655, 656 (1st Cir. BAP 2001); *Aetna Casualty and Surety Co. v. Markarian (In re Markarian)*, 228 B.R. 34, 47 (1st Cir. BAP 1998). Section 1307(c) provides that "on request of a party in interest or the United States Trustee, and after notice and a hearing," the bankruptcy court may convert or dismiss a case for cause. None of the parties have questioned whether any provision of the Bankruptcy Code permits the bankruptcy court to dismiss a Chapter 13 case *sua sponte*. Although the Bankruptcy Code contains no express authority, for the bankruptcy court to dismiss a Chapter 13 case *sua sponte*, the Panel notes that there are numerous decisions supporting such action by the bankruptcy court. *See* 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 337.1 (2002). For the purposes of this case, the Panel need not decide the extent of the bankruptcy court's authority to dismiss a Chapter 13 case *sua sponte*, but will assume that the bankruptcy court has such authority.

■ The Bankruptcy Code requires "notice and a hearing" before a Chapter 13 case may be dismissed. 11 U.S.C. § 1307(c). The Bankruptcy Rules contemplate that dismissal by the bankruptcy court shall only occur after the parties, including the debtor, are notified of the reasons for dismissal and the date of the hearing. *See* Fed. R. Bankr.P. 1017(f). Accordingly, both the Bankruptcy Code and Bankruptcy Rules require prior notice to the debtor of any hearing, accompanied by a motion or order to show cause specifying the reasons for dismissal, before dismissal may be considered. Even in the absence of the statutory requirements for notice, fundamental concepts of procedural due process would require notice to the Debtor and an opportunity to be heard on the bankruptcy court's reasons for dismissal. *In re Melendez Colon*, 265 B.R. 639,

---

5. The Panel notes that the bankruptcy court's order of June 25, 2002, dismissing the case, refers to the Second Motion to Dismiss and recites "no objection having been filed." The Panel shall disregard the first paragraph of that order which is contrary to the intent and rationale of the bankruptcy court as set forth in the transcript of the hearing of June 25, 2002, which is part of the record on appeal.

644 (1st Cir. BAP 2001) (*citing Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)).

After deciding that it did not have jurisdiction to hear the Second Motion to Dismiss, the bankruptcy court *sua sponte* dismissed the Debtor's Chapter 13 case on alternate grounds without notice or a meaningful opportunity for the Debtor to be heard on those grounds. The bankruptcy court's actions violated the Debtor's fundamental rights to procedural due process and the express requirements of the Bankruptcy Code. Accordingly, the Panel shall vacate the Dismissal Order.

### C. Proceedings on Remand

 The Second Confirmation Order amended the Debtor's original sixty month Chapter 13 plan to reflect a new fifty-four month plan and ordered the Debtor to make thirty-three monthly payments in the increased amount of $1,953.55 each commencing June 25, 2000. Therefore, the Debtor should have completed her confirmed Chapter 13 plan on February 25, 2003. On remand, the Debtor shall pay the balance due under the Second Confirmation Order or shall file a motion with the bankruptcy court for authority to refinance her residence within sixty (60) days of the date of this Opinion. If the Debtor fails to pay the balance due or to seek authority to refinance her residence, or to take any other step necessary to accomplish payment of the balance due under the Second Confirmation Order, the bankruptcy court may, after notice and a hearing, dismiss the Debtor's bankruptcy case.

Because the term of the Debtor's confirmed plan, as amended by the Second Confirmation Order, has expired, on remand any motion to refinance her residence to pay off the balance owed under the plan shall not be deemed a change in the substance or nature of her obligations under her confirmed Chapter 13 plan, but simply an attempt to cure any arrearage in plan payments. *See Mass. Housing Fin. Agency v. Evora*, 255 B.R. 336, 342 (D.Mass.2000).

### IV. Conclusion

For the reasons set forth above, the Panel VACATES both the Refinance Order and the Dismissal Order and REMANDS this case to the bankruptcy court for proceedings consistent with this Opinion.