**In re: VJ INTERNATIONAL, INC., Debtor**

**Wilfredo Segarra Miranda, Chapter 7 Trustee, Plaintiff**

**v.**

**Madelux International, Inc. Defendant.**

**Bankruptcy No. 02–08996.
Adversary No. 03–0167.**

United States Bankruptcy Court,
D. Puerto Rico.

May 1, 2006.

Francisco J. Ramos Gonzalez, Puerto Real, PR, for Debtor.

1. The Faceys filed a voluntary petition under chapter 7 of the Bankruptcy Code on November 25, 2002, case no. 02–12454.

2. In the complaint and the amended complaint, the trustee alleges that debtor made a

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE,
Bankruptcy Judge.

Before the court is the trustee's motion for summary judgment, as well as the defendant's opposition thereto and cross-motion for summary judgment. For the reasons set forth below, the trustee's motion for summary judgment is granted, and the defendant's motion for summary judgment is denied.

### Background

Debtor VJ International, Inc. ("VJ") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 27, 2002. The debtor corporation is owned by Vicente Facey Artigas and Victoria G. Facey Mendez [1], (hereinafter "the Faceys"). On November 10, 2003, the plaintiff herein, the chapter 7 trustee ("the trustee") filed the complaint commencing this adversary proceeding, seeking to avoid pre-petition transfers made, while the debtor was insolvent within ninety days of filing the bankruptcy petition, to the defendant, Madelux International, Inc. ("Madelux"). On January 25, 2005, the trustee filed an amended complaint.

Madelux received a total of $22,983.23 [2] in three checks; no. 1347 in the amount of $11,308.01, no. 1348 in the amount of $9,175.22, and no. 1364 in the amount of $2,500.00. On August 6, 2002, Madelux sent VJ a list of accounts receivables (dated July 31, 2002) that were pending payment showing over $84,858.03 due, $48,367.60 of which had arrears of over

series of preferential payments to Madelux totaling $98,914.84; however, the motion for summary judgment is limited to the amounts specified herein, which are addressed in paragraph 11 of the amended complaint.

sixty days. The payments by VJ to Madelux were made on July 12, 2002 (checks no. 1346 and 1347) and July 15, 2002 (check no. 1364).

The source of the funds to pay Madelux was check no. 056156, issued by National Insurance Company in the amount of $41,617.17 on July 8, 2002, and payable to VJ International Caribe, Inc., to indemnify VJ for damages suffered as the result of a fire at their premises on May 24, 2002. On July 9, 2002, the owners of the debtor corporation, the Faceys, deposited the insurance check into their personal account, no. 32–050887, at Banco Popular de Puerto Rico [3].

The trustee argues that the payments to Madelux constitute a preferential transfer which may be avoided pursuant to 11 U.S.C. § 547(b).

According to Madelux, the payments at issue were made pursuant to a personal warranty agreement signed by Mr. and Mrs. Facey on February 10th, 2002, whereby they personally guaranteed payment of any and all of the debtor corporation's outstanding obligations to Madelux, and, upon which, Madelux extended commercial credit to the debtor corporation. Madelux further argues that the amounts were transferred in the same manner as other amounts deemed legitimate—that is, 90–120 days from the delivery date, the only difference being that they were paid from the co-owners personal bank account instead of from the debtor's corporate account. According to Madelux, it did not know that the source of the funds used for the payment were proceeds of an insurance claim, nor did it know about the debtor's financial situation. Madelux argues that the transfers were made in the ordinary course of business in compliance with the debtor corporation owner's personal guarantee.

## Discussion
### Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that summary judgment should be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Bankr.P. 7056; *see also, In re Colarusso*, 382 F.3d 51 (1st Cir.2004), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10A Wright and Miller, *Federal Practice and Procedure* § 2712 (3d ed.1998). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." *Id.* Summary judgment is not a substitute for a trial of disputed facts; the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain. *Id.*

### Failure to Join an Indispensable Party

Madelux argues that the trustee's motion for summary judgement should be denied because he failed to join an indis-

---

**3.** According to the bank statement submitted by the trustee, the Facey's account had a balance of $89.90 on July 8, 2002.

pensable party; namely, the debtor corporation's co-owners, the Facey's, who, according to Madelux, were the "initial transferees" of the insurance proceeds. Pursuant to Rule 19 of the Federal Rules of Civil Procedure, made applicable herein by Rule 7019 of the Federal Rules of Bankruptcy Procedure the following factors should be considered in determining whether a party is indispensable: (1) to what extent a judgment rendered in the person's absence may be prejudicial to them or other parties; (2) to what extent the prejudice can be lessened or avoided by protective provisions in the judgment, the shaping of relief, or other measures; (3) whether a judgment without the person will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for non-joiner. Madelux argues that the trustee should have sought to recover the entire $41,617.17 proceeds of the insurance check from the Faceys, and by failing to do so consented to the Facey's use of the money to pay their personal and corporate debts.

*Preferential Transfers*

██ Section 547(b) of the Bankruptcy Code provides that the trustee can avoid any transfer of an interest of the debtor in property to or for the benefit of a creditor, for or on account of an antecedent debt, which is made while the debtor is insolvent and on or within ninety days before the date of the filing of the petition, if said transfer enables the creditor to receive more than it would if the case was under Chapter 7, the transfer had not been made, and the creditor received payment as provided by the Code. 11 U.S.C. § 547(b). In order for a transfer to be deemed avoidable as a preference, the burden of proving all five of these elements is on the trustee. 5 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 547.03(15th ed rev'd 2006), citing *Boberschmidt v. Society Nat'l Bank (In re Jones)*, 226 F.3d 917, 921 (7th Cir.2000); *In re Bullion Reserve of North America*, 836 F.2d 1214, 1217 (9th Cir.), *cert. denied*, 486 U.S. 1056, 108 S.Ct. 2824, 100 L.Ed.2d 925 (1988); *Waldschmidt v. Ranier (In re Fulghum Construction Corp)*, 706 F.2d 171, 172 (6th Cir.1983), *cert. denied*, 464 U.S. 935, 104 S.Ct. 342, 78 L.Ed.2d 310 (1983).

The purpose of the preference section of the Bankruptcy Code is two-fold; first, to avoid the "race to the courthouse" of the creditors pre-filing, and second, and most importantly, to facilitate the key bankruptcy policy of equality of distribution among the debtor's creditors. *Collier* at 547–9.

The first element requires that a transfer be made to or for the benefit of a creditor. It is undisputed that a transfer was made to Madelux, which is a creditor of the debtor corporation.

The second element requires that the transfer be for or on account of an antecedent debt owed by the debtor before such transfer was made. According to the trustee, this was the case; he additionally argues that the debtor generally paid Madelux late. The evidence submitted by the trustee demonstrates that a balance was owed to Madelux by the debtor corporation at the time the transfers were made, as well as a pattern of late payment by the debtor corporation[4]. Madelux does not

---

4. The Madelux International "Aged Receivables" report as of July 31, 2002, for VJ International, Inc., which was attached to the trustee's motion for summary judgment, shows a balance of $36,490.43 due 0–60 days, $24,471.90 due 61–90 days, $22,245.70 due 91–120 days, and $1,650.00 due over 121 days, for a total amount due of $84,858.03. As for payments on the accounts receivable, the report shows only the following: $2,500.00 on February 13, 2002, $1,585.47 on February 28, 2002, $1,450.78 on March 11, 2002, $662.97 on April 8, 2002, $1.85 on May 28, 2002, and $4.34 on June 6, 2002.

contest that the payments made by the Faceys was on account of an antecedent debt of VJ International with Madelux, and concedes that Madelux was customarily paid late.

The third element requires that the transfer be made while the debtor was insolvent. The Bankruptcy Code defines "insolvent" as a "financial condition such that the sum of such entity's debts is great than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title". *Collier*, ¶ 547.03[5], citing 11 U.S.C. § 101(32). The determination of insolvency focuses on the time en the alleged preferential transfer was made. *Id.* "A rough 'balance sheet' test determines insolvency; the debtor is insolvent when its liabilities exceed the fair value of its nonexempt assets." *Id.* A review of the schedules filed with debtor's petition shows assets of $23,695.88 and liabilities of $210,274.04.

Section 547(f) provides that, for the purposes of that section, the debtor is presumed insolvent during the ninety days preceding the filing of the petition; said presumption facilitates the trustee's ability to establish a preference. *Id.* The presumption shifts the burden of going forward with evidence; that is, the party against whom presumption operates must come forward with some evidence to rebut the presumption. *Id.* However, the burden of proof remains on the trustee. "In the absence of 'evidence to meet or rebut the presumption,' the trustee is entitled to rely upon the presumption of insolvency in his favor." *Id.* at 547–40, citing *Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.)*, 695 F.2d 833, 838 (5th Cir.1983); *Sapir v. Eli Haddad Corp. (In re Coco)*, 67 B.R. 365, 371 (Bankr.S.D.N.Y.1986). Madelux has not come forward with any evidence to rebut the presumption of insolvency; therefore, the trustee may rely upon it for the purposes of this preference action [5].

The fourth element requires that the transfer be made within ninety days before the filing of the petition. The checks establish this fact [6] and it is uncontested.

The fifth element requires that the transfer enabled the creditor to receive more than it would receive if the case were under Chapter 7 of the Code, the transfer had not been made, and the creditor received payment of the debt to the extent provided by the Code. In making this determination, the court must decide the transferee's creditor class and determine what distribution the class would have received had the transfer not been made. *Collier*, ¶ 547.03[7]. "Any payment to a general *unsecured* creditor within the 90–day period preceding the filing of the petition *would be* preferential if other creditors in the same class would not receive the same payment in a chapter 7 liquidation, i.e. the chapter 7 distribution *plus* the payment received." *Id.* at 547–45.

---

**5.** In fact, Madelux submits the deposition transcript of Vicente Facey Artigas, wherein he explains that he deposited the insurance check made out to VJ International into his personal bank account "in order to lengthen the business's life" because "[t]his credit line [for the corporate account] had a limit and if I were to have deposited that money into this account, Banco Popular was going to take that money immediately because they already knew the situation that the business was in. I would have to have shut the business down faster."

**6.** The checks were issued on July 12 and 15, 2002, and the petition was filed on August 27, 2002, 46 days later.

According to the trustee, the payments at issue allowed Madelux to receive an amount which exceeded what it would have received under a chapter 7 distribution. The trustee argues that since at the time of the filing of the petition the debtor had assets of $23,695.88 and unsecured claims of $206,644.64, the receipt by Madelux of $22,983.23 is clearly preferential and prejudices the other unsecured creditors [7].

Madelux argues that the transfers at issue do not meet the requirements set forth in § 547(b) and that the trustee has not proven all of the elements of a preferential payment as set forth in that section. The court disagrees, and finds that the trustee has established each of the elements of a preferential transfer under § 547(b). However, the transfers at issue may not be avoided if Madelux can prove that is entitled to rely on one of the exceptions set forth in § 547(c) [8].

*Ordinary Course of Business Exemption*

■ Section 547(c)(2) of the Bankruptcy Code establishes one of the exceptions to the avoidance of preferential transfers, stating that the "trustee may not avoid a transfer to the extent that such transfer was ... (A) In payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and (C) made according to ordinary business terms". The purpose of this exception is "to leave undisturbed normal finan-cial relations, because it does not detract from the general policy of the preference section to discourage unusual actions by either the debtor or his creditors during the debtor's slide into bankruptcy." *Brandt v. Repco (In re Healthco International, Inc.)*, 132 F.3d 104 (1st Cir.1997), citing H.R.Rep. No. 595, 95th Congress, 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5963. In *Healthco*, the court listed several factors to be considered in determining whether a particular transfer warrants protection under § 547(c)(2), including the amount transferred, the timing of the payment, the historic course of dealings between the debtor and the transferee, and the circumstances under which the transfer was effected. 132 F.3d at 109. The ordinary course of business exception is an affirmative defense for which the defendant carries the burden of proof on each of the elements. *Collier*, ¶ 547.04[2][a]. The trustee argues that the exemption does not apply in this case, and that Madelux has not met its burden of establishing that it does.

The first element of the exception requires the court to determine whether the underlying debt upon which payment was made was incurred in the ordinary course of business or financial affairs of both parties. *Collier*, ¶ 547.04[2][a][ii][A]. In other words, the court must consider the normality of such occurrences in each party's business operations. *Id.* The record must include evidence that satisfies the defen-

---

7. If the IRS' priority claim of $3,629.40 is subtracted from the debtor's $23,695.88 in assets, a balance of $20,066.48 remains to be shared by the unsecured creditors with claims totaling $206,644.64, a pay out of approximately ten cents on the dollar.

8. Madelux also argues that the transfers at issue are not recoverable because they do not constitute property of the estate or an interest in property of the estate in that the transfer came from the Faceys and belonged to them, not to the debtor corporation. This argument is without merit; Vicente Facey Artigas admits in his deposition, attached to Madelux' motion, that the check belonged to the corporation but was deposited into his personal account in order to prevent Banco Popular from accessing the funds.

dant's burden of proof on the issue. The affidavit of Jorge Ayala Fernandez, General Manager of Madelux, which was attached to their motion, indicates that the ordinary business terms between Madelux and VJ were (1) payments made within 90–120 days of delivery; (2) collection notices were tendered; (3) payments were made by cash, corporate checks signed by Vicente Facey Artigas and/or third-party checks endorsed by VJ International; and (4) payments were made with personal [checks] pursuant to the personal warranty executed by Mr. and Mrs. Facey. The affidavit further states that Madelux supplied, delivered and sold merchandise in the same manner since the beginning of the business relationship with VJ until its bankruptcy filing on August 27, 202, and that during at time, purchases were paid for in this manner. The trustee does not argue that the debt underlying the payments to Madelux was not incurred in the ordinary course of business; further, the accounts receivables report attached to its motion indicates a series of purchases from February 13, 2002, until July 22, 2002. Accordingly, the court finds that this element of the ordinary course of business defense has been established.

 The second element of the exception requires the court to determine whether the transactions between the debtor and the creditor were consistent before and during the ninety-day period. *Collier*, ¶ 547.04[2][a][ii][B]. The defendant must establish a "baseline of dealing" so that the court can compare transfers made during the preference period with those made when the debtor's operations were "ordinary". *Id.* Courts have considered four factors in determining whether a payment was made in the ordinary course of business between the debtor and creditor: "(1) [the] length of time the parties were engaged in the transaction in issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in unusual collection or payment activities; and (4) the circumstances under which the payment was made." *Id.* at 547–61, citing *Payne v. Clarendon Nat'l Ins. Co. (In re Sunset Sales, Inc.)*, 220 B.R. 1005 (10th Cir.BAP1998). The aforementioned affidavit of Mr. Ayala indicates that Madelux did business with VJ from February 10, 2002, until August 27, 2002, some six and a half months. According to his statement, payments were made within 90–120 days; however, the parties only did business for 197 days before the petition was filed. According to the aged receivables report submitted by the trustee, three payments were made on February 13, 2002, February 28, 2002 and March 11, 2002 [9], and another on April 8, 2002; thereafter, only two small payments are shown [10]. Therefore, the information in the "Aged Receivables" report submitted by the trustee contradicts the affidavit of Mr. Ayala and demonstrates that the payments at issue, in the amounts of $11,308.01, $9,175.22 and $2,500, were not in the "ordinary course of business" between VJ and Madelux.

Furthermore, Mr. Ayala's affidavit states that Madelux was paid by cash, corporate checks signed by Vicente Facey, third-party checks endorsed by VJ, and personal checks of the Faceys; however, in the deposition transcript of Vicente Facey, submitted by Madelux, he testifies that "all payments were made from this [corporate] account", at least until the personal account was created, into which the

---

9. In the amounts of $2,500.00, $1,585.47 and $1,450.78, respectively.

10. A payment of $1.85 was made on May 28, 2002, and a payment of $4.34 was made on June 6, 2002.

insurance check was deposited. There is no additional evidence provided by Madelux as to the method of payment used by VJ, and Mr. Ayala's affidavit is contradicted by Mr. Facey's testimony, both submitted by Madelux in support of their motion. Accordingly, the court finds that Madelux has not established that the payments it received were made in the ordinary course of business between it and VJ and, further, the trustee has established that they were, in fact, not made in the ordinary course of business.

■ The third element of the exception requires the court to determine that the challenged payment satisfies an "industry standard". Madelux did not present any argument or evidence to this element.

The court concludes that Madelux has not established the "ordinary course of business" exception to the preferential transfer provisions of section 547(b)[11].

*Good Faith Transferee*

■ While section 547 concerns the avoidance of transfers, the recovery of a transfer avoided under section 547 is governed by section 550 of the Bankruptcy Code. *Collier* ¶ 547.01, fn. 3 (15th ed rev'd 2006), citing Pitts, *Insider Guaranties and the Law of Preferences*, 55 Am. Bankr.L.J. 343, 346–47 (1981) ("We must look to section 550 to determine that the trustee may recover an avoided transfer from, with certain exceptions and extensions, 'the initial transferee of such transfer or the entity for whose benefit such transfer was made.' ").

Section 550 provides that to the extent a transfer is avoided pursuant to various sections, including § 547, the trustee may recover the property transferred, or its value, for the benefit of the estate, from the initial transferee or any immediate or mediate transferee of such initial transferee. 11 U.S.C. § 550(a). However, the trustee may not recover from "a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided". 11 U.S.C. § 550(b). Madelux argues that the payments it received from the debtor corporation's principals cannot be deemed an avoidable transfer because it is a "good faith" transferee which received a transfer without knowledge of its voidability. According to Madelux, the co-owners of the debtor corporation were the transferee's of the insurance proceeds, and it is an "immediate or mediate" transferee of them.

The court disagrees. VJ did not "transfer" the insurance proceeds to its principals; rather, the Facey's took the check payable to VJ and deposited it into their personal account. They then acted as an agent of the debtor corporation to transfer the funds to Madelux, one of VJ's creditors, to whom they were also personally liable pursuant to the guaranty. Accordingly, Madelux is an "initial transferee" from whom the trustee may recover under § 550(a). "The scope of subsection (b) does not include an initial transferee of the debtor or an agent of the debtor even if the initial transferee takes in good faith and for present fair equivalent value."

---

11. Madelux argues that payments made by a debtor during the preference period pursuant to a debt restructuring agreement, wherein the debtor corporation's owner provided a personal warranty, like the case herein, may be classified as "ordinary course of business" payments depending upon the nature of the industry practice. *In re Kaypro,* 218 F.3d 1070 (9th Cir.2000); *see also, In re Roblin Industries, Inc.,* 78 F.3d 30 (2nd Cir.1996) (creditors should have an opportunity to assert the ordinary course of business exception in an industry where frequent debt rescheduling is the ordinary and usual practice). There has not been any evidence of a debt restructuring agreement presented herein.

*Collier*, ¶ 550.03, citing *In re M. Blackburn Mitchell Inc.*, 164 B.R. 117, 125 (Bankr. N.D.Cal.1994) (even "innocent" initial transferee is liable for transfer).

The court concludes that since Madelux was an initial transferee of the funds received, the "good faith transferee" exception found in § 550(b) does not apply to it, and the trustee may recover from it the funds transferred pursuant to § 550(a).

### Conclusion

The trustee has established that the transfers at issue herein constitute a preferential transfer under 11 U.S.C. § 547(b). Since Madelux has not established that the ordinary course of business exception found in 11 U.S.C. § 547(c)(2) applies to said transfers, nor that it is a "good faith transferee" under 11 U.S.C. § 550(b), the court concludes that the trustee may recover said transfers pursuant to 11 U.S.C. § 550(a). Accordingly, the trustee's motion for summary judgment is GRANTED and the motion for summary judgment filed by Madelux is DENIED.

The clerk shall enter judgement accordingly.

SO ORDERED.